**Mozell BOYD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0106–CR–269.**

Court of Appeals of Indiana.

March 7, 2002.

Susan D. Rayl, Indianapolis, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mozell Boyd was convicted of Criminal Confinement and Attempted Criminal Confinement, both as Class B felonies, following a jury trial. Boyd now challenges his convictions, raising the following two issues for our review:

1. Whether the State presented sufficient evidence to support his convictions.

2. Whether his convictions for confinement and attempted confinement violate the Indiana constitutional prohibition against double jeopardy.

We affirm in part, and reverse in part.

### FACTS AND PROCEDURAL HISTORY

In August 2000, Audie Wilson unlocked and entered his car, which was parked behind an Indianapolis apartment building. As Wilson put his key into the ignition, Dewayne Perry, armed with a handgun, approached and ordered Wilson to exit the vehicle. Holding a gun to his back, Perry forced Wilson to walk toward the door of the apartment building. When they reached the building, Perry knocked twice on a nearby door, and from inside the stairwell Boyd emerged, along with his nephew, Ovanda Boyd. Perry gave the gun to Boyd and went to retrieve Wilson's car. Boyd held the gun on Wilson as they waited for Perry, who returned with the car in a few minutes. Boyd, along with Ovanda, intended to stuff Wilson into the car's trunk. But when they were unable to open it, they decided to throw Wilson in the back seat. Wilson resisted, and a scuffle ensued. After a three or four minute skirmish, Wilson was able to fend off Boyd and Ovanda. The pair left Wilson lying on the ground and crawled into the car as Perry, who was driving, sped away from the scene.

The State charged Boyd with Carjacking, Robbery, Criminal Confinement, Attempted Criminal Confinement, and Carrying a Handgun Without a License, although the State dismissed the robbery count prior to trial. The jury failed to reach a verdict on the carjacking count and acquitted Boyd of carrying a handgun without a license, but they found him guilty of both criminal confinement and attempted criminal confinement. The trial court entered judgment of conviction and sentenced Boyd to two concurrent ten-year terms. This appeal followed.

## DISCUSSION AND DECISION

### Sufficiency of the Evidence

Boyd initially argues that the State presented insufficient evidence to support his conviction for criminal confinement. We do not agree.

The proper standard of review on a claim of sufficiency of the evidence is well settled. *Wheeler v. State*, 749 N.E.2d 1111, 1115 (Ind.2001). The court does not reweigh the evidence or judge the credibility of the witnesses. *Wallace v. State*, 722 N.E.2d 910, 912 (Ind.Ct.App.2000). Instead, we consider only that evidence most favorable to the verdict along with all reasonable inferences drawn therefrom. We will affirm the conviction if sufficient probative value exists such that a trier of fact could find the defendant guilty beyond a reasonable doubt. *Wheeler*, 749 N.E.2d at 1115.

To convict Boyd of criminal confinement, the State had to prove beyond a reasonable doubt that he knowingly or intentionally: (1) confined another person without the other person's consent; or (2) removed another person, by fraud, enticement, force, or threat of force from one place to another. *See* Ind.Code § 35–42–3–3.

■ The state sought to convict Boyd as an accomplice. To do so, the State needed to prove that Boyd knowingly or intentionally aided, induced, or caused another person to commit criminal confinement, regardless of whether the other person had been prosecuted, convicted, or acquitted of that offense. *See Sanquenetti v. State*, 727 N.E.2d 437, 441 (Ind.2000) (citing to Indiana Code Section 35–41–2–4). There is no separate crime of being an accessory or aiding and abetting the perpetrator of a crime; rather a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Id.* The individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Id.*

■ The following factors are considered in determining if a defendant aided another in the commission of a crime: "(1) presence at the scene of the crime; (2) companionship with another at scene of the crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during and after occurrence of crime." *Vitek v. State*, 750 N.E.2d 346, 352 (Ind.2001). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Garland v. State*, 719 N.E.2d 1236, 1237 (Ind.1999). In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may be reasonably drawn. *Peterson v. State*, 699 N.E.2d 701, 706 (Ind.Ct.App. 1998).

■ Here, Wilson testified that Perry escorted him at gunpoint from his vehicle to the door of the apartment building. After Perry knocked on the door, Boyd and Ovanda emerged from the stairwell. Boyd held the gun on Wilson while Perry went to retrieve Wilson's vehicle. Wilson testified that Boyd and Ovanda attempted to shove him first into the trunk and then into the back seat of his vehicle. After a struggle ensued, Boyd, Ovanda, and Perry fled together in Wilson's vehicle.

In addition, Boyd admitted to Indianapolis Police Detective, Delbert Shelton, during an interview that he and Ovanda had gone to the apartment complex to "encounter" Wilson and had run into Perry. Boyd asked Perry if he "wanted to join along," and Perry agreed. Based on this evidence, we hold that a jury could have reasonably found that Perry confined Wilson without his consent and that Boyd knowingly or intentionally aided Perry in that pursuit.

### Double Jeopardy

Boyd next contends that his dual convictions of criminal confinement and attempted criminal confinement violate the Indiana Constitution's prohibition against double jeopardy. Specifically, Boyd argues that since the confinement incident in this case was continuous, he could have been properly convicted of only one confinement offense. We agree.

■ Article 1, Section 14 of the Indiana Constitution states, in relevant part, that "[n]o person shall be put in jeopardy twice for the same offense." The

right to not be twice put in jeopardy stems from the underlying premise that a defendant should not be twice tried or punished for the same offense. *Davis v. State,* 691 N.E.2d 1285, 1288 (Ind.Ct.App.1998). On appeal, the defendant bears the burden to show that his convictions violated his constitutional right to be free from double jeopardy. *Lutes v. State,* 272 Ind. 699, 401 N.E.2d 671, 672–73 (1980).

■ In support of his argument, Boyd cites to this court's opinion in *Idle v. State,* 587 N.E.2d 712 (Ind.Ct.App.1992). There, Idle was convicted of two counts of criminal confinement against the same victim each count alleging that he had violated a different subsection of Indiana Code Section 35–42–3–3. We reversed and remanded to the trial court, instructing it to vacate one of the two confinement convictions, holding that the two confinement convictions amounted to punishment for the "same offense" and, therefore, violated double jeopardy. *Id.* at 718. We reasoned that a violation of that statute during one *continuous* confinement may result in only one confinement conviction, notwithstanding that the defendant engaged in two different acts, one proscribed in subsection one, and the other in subsection two. *Id.* (Emphasis added). We did not, however, foreclose the possibility that a single incident of confinement could result in two separate convictions; rather, the determinative factor is whether the confinement may be divided into two separate parts. *Id.* at 716–17. A confinement ends when the victim both feels and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established. *Id.* at 717; *see Bartlett v. State,* 711 N.E.2d 497, 500 (Ind.1999) (reaffirming that crimes such as kidnapping and confinement are defined under "continuing crime doctrine," and

that confinement ends only when victim feels, and is actually, free from detention).

The State contends that *Idle* and *Bartlett* have been superseded by our supreme court's decision in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), in which the court synthesized Indiana's constitutional double jeopardy jurisprudence into the following two-part analysis:

> [T]wo or more offenses are the "same offense" in violation of Article [1], Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 50. These two steps are commonly referred to as the (1) "statutory elements test" and the (2) "actual evidence test." *Id.* The State argues that this double jeopardy analysis renders the "continuing crime doctrine" obsolete. We do not agree.

In *Richardson* our supreme court listed several cases which would be superseded by its holding. Neither *Idle* nor *Bartlett* was among those listed. In addition, the State's application of the *Richardson* test is overbroad. The statutory elements and actual evidence tests are designed to assist courts in determining whether *two separate chargeable crimes* amount to the "same offense" for double jeopardy purposes. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. In doing so, the continuous crime doctrine prevents the state from charging a defendant twice for the same continuous offense.

In applying that doctrine, if we determine here that Boyd's conduct is "continu-

ous" and therefore one crime, then there are not two separate chargeable incidents of confinement to analyze under the *Richardson* test. On the other hand, if Boyd committed two separate incidents of confinement, then we may look both to the statutory elements and the actual evidence presented in order to determine whether the two convictions amount to the "same offense" for double jeopardy purposes.

As we noted earlier, the State may prove criminal confinement by proving that a defendant (1) confined another person without his consent or (2) removed a person, by fraud, enticement, force or threat of force from one place to another. Here, the State based the criminal confinement charge upon the second statutory element, while the *attempted* criminal confinement charge was based on the first element.

 Acting as Perry's accomplice, Boyd first confined Wilson when Perry ordered Wilson from his car at gunpoint and escorted him toward the apartment building. At that point, Boyd and Ovanda emerged from the building and trained the gun on Wilson while Perry went to get the car. Once the car arrived, Boyd and Ovanda attempted to shove Wilson first into the trunk and then the back seat of the automobile before Wilson was finally able to fight back and force Boyd and the others to leave the scene in Wilson's car. This evidence shows unequivocally that Wilson was "continuously confined" from the moment that he exited his car at gunpoint until Boyd and the others sped away in his car. Therefore, it does not matter that Boyd's conduct satisfied both elements of the confinement statute during this continuous period, in that he both confined Wilson and attempted to move him from one place to another. There was but one continuous period of confinement, and both of Boyd's convictions flowed from that offense. *See Idle,* 587 N.E.2d at 717. Because it is improper to sentence a defendant twice for the same offense in a single proceeding, the trial court erred when it sentenced Boyd on both the criminal confinement and attempted criminal confinement convictions. *See id.* Boyd's dual convictions and sentences violate the double jeopardy clause of the Indiana Constitution. We therefore vacate his conviction and sentence for attempted criminal confinement, as a class B felony.

Affirmed in part, and reversed in part.

BAKER, J., and MATTINGLY–MAY, J., concur.