**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**J. CLAYTON MILLER**
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES L. HEBNER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1111-CR-605 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Charles K. Todd, Jr., Judge
Cause No. 89D01-0907-FC-18

**July 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

James L. Hebner appeals his three convictions for resisting law enforcement, one as a class D felony and two as class A misdemeanors.[1] Hebner raises three issues, which we revise and restate as:

I.     Whether the evidence is sufficient to support Hebner's conviction for resisting law enforcement as a class D felony; and

II.    Whether one or more of Hebner's convictions for resisting law enforcement violate Indiana's prohibition against double jeopardy or the continuing crime doctrine.

We affirm in part and reverse in part.

The relevant facts follow. At approximately 12:15 a.m. on July 14, 2009, Richmond Police Officers Ami Miller and Robert Lipps were dispatched to the location of an apartment in Richmond, Indiana, and had information of a possible party involving juveniles smoking marijuana and that one of the residents of the apartment, Hebner, had an outstanding arrest warrant.

Officers Miller and Lipps arrived at the apartment, which was an upstairs unit in a multi-unit building, knocked loudly on the door, and announced that they were police officers. As the officers turned away to walk down the stairs, Officer Lipps observed Hebner "open the door, peek out, [see] that [he] was a police officer and then slam[] the door," and the officers returned to the apartment and continued to knock. Transcript at 234. Hebner did not answer. At some point, a man exited another apartment unit and stated that his brother Hebner lived at the apartment to which the officers were dispatched. The officers contacted the property owner and made arrangements for the

[1] Ind. Code § 35-44-3-3 (Supp. 2006) (subsequently amended by Pub. L. No. 100-2010, § 6, Pub. L. No. 102-2010, § 2 (eff. July 1, 2010); Pub. L. No. 42-2011, § 74 (eff. Apr. 20, 2011); Pub. L. 126-2012, § 53 (eff. July 1, 2012) (provision recodified at Ind. Code § 35-44.1-3-1)).

owner to bring a key to the building, and the officers waited for the person to arrive. Also, other officers, including Officers Michelle Kircher and David Glover, set up a perimeter around the building.

Officer Kircher, who stood on the north side of the building and watched the windows, observed a man matching Hebner's description run or sprint from an alley next to the building, radioed that information to dispatch and the other officers, and then pursued Hebner on foot. Officer Kircher shouted verbal commands for Hebner to stop and identified herself as a police officer, Hebner did not comply, and Officer Kircher eventually lost sight of Hebner. Officer Glover walked up the street shining his flashlight through the houses to check to see if he could see anyone between the houses. Officer Glover observed Hebner hiding behind a bush on the corner of a garage, and Hebner looked in Officer Glover's direction and then "took off running." Id. at 212. Officer Glover shouted the command of "stop, police" and advised other officers of his location. Id. Officer Glover pursued Hebner, Hebner jumped over a fence, and Officer Glover, when he was within approximately fifteen feet of Hebner, discharged his Taser which caused Hebner, who was wearing only blue jeans, to fall to the ground. Other officers arrived to assist Officer Glover, and Hebner was placed under arrest on his outstanding warrant and for fleeing law enforcement and transported to a hospital for a medical evaluation pursuant to standard department procedure after a Taser is deployed. At the hospital, Hebner's demeanor was quiet and cooperative. Hebner asked Officer Kircher to loosen his handcuffs, and, after Captain Thomas Porfidio approved, Officer Kircher

3

loosened the handcuff on one of Hebner's wrists. Hebner was examined and released from the hospital, and officers prepared to transport Hebner to jail.

As they exited the hospital, Officer Lipps walked in front of Hebner, Officer Kircher walked with Hebner, and Captain Porfidio walked several feet behind Officer Kircher. At a point when Officer Lipps was at the door of the hospital and exiting into the parking lot, Hebner slipped his right hand out of the handcuffs, shoved past Officer Lipps, and ran out the door. Officers ordered Hebner to stop, and Officer Kircher pulled out her Taser and deployed it in an attempt to stop Hebner but missed. Hebner continued down a very steep hill, falling and rolling to a sidewalk at the bottom, and then ran into a wooded area, and Officers Lipps and Kircher pursued Hebner. The officers commanded Hebner to stop, but Hebner did not comply and "was sprinting as fast as he could sprint." Id. at 266. The officers followed Hebner into the woods, where their radios were not working and there was little or no light, and determined Hebner's location by his "feet breaking twigs, stepping on leaves, [and his] body falling down every ten seconds." Id. at 265.

At a point when he was about ten to fifteen feet away from Hebner, Officer Lipps observed Hebner attempting to climb a tree and approximately five to ten feet off of the ground in the tree. Officer Lipps ordered Hebner to stop and come down, and Hebner jumped out of the tree, landed on the ground, turned away from Officer Lipps and "was in [] what you would call the runner's position – a crouch position getting ready to run." Id. at 269. Officer Lipps then stated Hebner: "stop, police, turn around, show me your hands," and Hebner began to run. Id. Officer Lipps, who was approximately ten to

4

twelve feet away from Hebner, then deployed his Taser, which had some effect on Hebner because Officer Lipps observed Hebner's "body lock up for just a second." Id. at 271. Officer Lipps ran toward Hebner to grab his hands to try to re-handcuff him, but Hebner turned around, shoved Officer Lipps, and "started to throw punches at" Officer Lipps. Id. The altercation between Hebner and Officer Lipps "went on for several minutes," and Hebner "was doing everything he could to get away from [Officer Lipps] and [Officer Lipps] was doing everything [he] could to keep [Hebner] in custody." Id. at 273. Hebner "landed several blows on [Officer Lipps's] upper body and . . . a couple in [his] neck and . . . chin," and Hebner spat on Officer Lipps. Id. at 274.

Officer Lipps was eventually able to knock Hebner off balance, place Hebner on the ground, and place Hebner's hands behind his back when Officer Kircher arrived to assist him in handcuffing Hebner. Hebner was "flailing" and "just swinging and kicking and trying to get away." Id. at 350. Officer Kircher attempted to assist Officer Lipps with gaining control of Hebner, and Hebner struck Officer Kircher, who was kneeling on the ground, as he struggled. When Officers Lipps and Kircher placed Hebner on his feet to exit the woods, Hebner was uncooperative and let his body "go limp" so that he "wouldn't walk out of the woods on his own power," and the officers "had to pick him up and then push him forward to get him out of the woods." Id. at 279. About half way out of the woods, Captain Porfidio arrived and assisted Officer Lipps with escorting Hebner out of the woods while Officer Kircher used her flashlight to light the way. The officers eventually returned with Hebner to the hospital's emergency room. Officer Kircher was also admitted to the hospital due to a knee injury.

5

On July 14, 2009, the State charged Hebner with Count I, escape as a class C felony; Count II, battery by bodily waste as a class D felony; Count III, resisting law enforcement as a class D felony; Count IV, resisting law enforcement as a class A misdemeanor; and Count V, resisting law enforcement as a class A misdemeanor. A jury found Hebner guilty on all five counts. The court sentenced Hebner to six years and one hundred eighty days under Count I, two years each under Counts II and III, and one year each under Counts IV and V, with all sentences to be served concurrently.

I.

The first issue is whether the evidence is sufficient to sustain Hebner's conviction for resisting law enforcement as a class D felony under Count III. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Ind. Code 35-44-3-3(a) provided at the time of the offense that "[a] person who knowingly or intentionally. . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor . . . ." Ind. Code § 35-44-3-3(b) provided that the offense is a class D felony if "while committing any offense described in subsection (a), the person draws or

6

uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person . . . ." In Count III, the State alleged that Hebner "did knowingly or intentionally forcibly resist, obstruct, and/or interfere with Michelle Kircher, a law enforcement officer with the Richmond Police Department, to wit: fought and/or struggled with Officer Kircher, while said officer was lawfully engaged in her duties as a law enforcement officer, to-wit: attempting to restrain and/or arrest . . . Hebner, said acts resulting in bodily injury to Officer Kircher, to-wit: injured knee and/or physical pain, contrary to Indiana law." Appellant's Appendix at 48.

Hebner argues that he did not cause bodily injury to Officer Kircher and thus that this court should vacate his enhanced class D conviction under Count III or, at most, enter a judgment of conviction for resisting law enforcement as a class A misdemeanor.[2] Hebner argues that Officer Kircher's knee was already injured when she chased him and that Officer Kircher admitted that she may have merely aggravated a prior injury. The State argues that Officer Kircher testified that when she chased Hebner into the woods she was fine, that when she came out of the woods her knee was painfully swollen and aggravated, that she was struck by Hebner in the struggle to handcuff him and was on her knees during that time, that the jury was free to infer that Hebner's resistance to law enforcement caused the injury, and thus that the evidence is sufficient to support Hebner's class D felony conviction under Count III. In his reply brief, Hebner argues that Officer Kircher had a preexisting knee injury, that neither the State nor Officer

---

[2] Hebner does not argue that the evidence is insufficient to support his other convictions.

7

Kircher can reduce Officer Kircher's knee injury to any specific blow or strike by Hebner, and that "Officer Kircher's injury was not directly related to and caused by Hebner's resisting arrest." Appellant's Reply Brief at 3.

The record reveals that Officer Kircher testified that she was injured during the struggle to apprehend Hebner. Officer Kircher indicated that, while she was kneeling on the ground fighting with Hebner, Hebner struck her and kicked at her. Officer Kircher testified that her knee did not hurt at the time she was leaving the hospital and that it did hurt following the altercation with Hebner in the woods.

Based upon our review of the testimony most favorable to the conviction, we conclude that a reasonable jury could have found that, as charged under Count III, Hebner inflicted or otherwise caused the bodily injury sustained by Officer Kircher and that sufficient evidence exists from which the jury could find Hebner guilty beyond a reasonable doubt of resisting law enforcement as a class D felony. See Whaley v. State, 843 N.E.2d 1, 10-11 (Ind. Ct. App. 2006) (holding that the evidence was sufficient to sustain the defendant's convictions for two counts of resisting law enforcement as class D felonies where the defendant argued that the officers inflicted the injuries upon themselves in attempting to handcuff him), trans. denied.

II.

The next issue is whether one or more of Hebner's convictions for resisting law enforcement violate double jeopardy or the continuing crime doctrine.[3] Hebner maintains that he should not held liable for more than one count of resisting law enforcement when

---

[3] Hebner does not challenge his convictions under Counts I or II.

the charges stemmed from a single incident, regardless of the number of police officers resisted. Hebner cites Armstead v. State, 549 N.E.2d 400 (Ind. Ct. App. 1990), and states that "[t]he State may argue two incidents of resisting law enforcement occurred: the first incident having occurred prior to Hebner's arrest and the second incident having occurred after he ran from the hospital" and that "[a]ccordingly, the State may argue the multiple resisting law enforcement convictions should stand." Appellant's Brief at 9. Hebner asserts however that "the State failed to distinguish separate incidents within Counts III, IV, and V of the Information" and that "two of the three counts of resisting law enforcement (Counts III, IV, and V) should be vacated because the harm caused was the same regardless of the number of police officers resisted." Id. at 9-10. Hebner further maintains that his convictions under both Counts III and IV violate double jeopardy, specifically that "[t]he evidentiary facts establishing any one or more elements of Count III establishes all the essential elements of Count IV," that "[t]herefore, either Count III or IV should be vacated to eliminate the double jeopardy issue," and that "Count III should be the count vacated." Id. at 10-11.

The State argues that Count III related to the injury of Officer Kircher, that Count IV stemmed from the point when Hebner struggled against Officer Lipps in the woods, and that Count V related to when Hebner fled both Officers Lipps and Kircher despite their commands to stop. The State asserts that Armstead is distinguishable in that the facts "truly consisted of one episode of criminal conduct—Armstead was resisting three officers at one point in time." Appellee's Brief at 9. The State cites Whaley v. State, 843 N.E.2d 1, for the proposition that where multiple convictions arise where separate victims

9

are involved, no double jeopardy violation exists. The State also argues that the charges under Counts III, IV, and V required the State to prove separate victims and separate acts under discrete charges under different sections of the statute and that there is no double jeopardy violation here. In his reply brief, Hebner argues that he "did not commit resisting law enforcement resulting in any victimized person" and that "[t]herefore, two of the three counts of resisting law enforcement . . . should be vacated because the harm allegedly caused was the same regardless of the number of police officers resisted." Appellant's Reply Brief at 5.

The continuing crime doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime and prevents the State from charging a defendant twice for the same continuous offense. Koch v. State, 952 N.E.2d 359, 373 (Ind. Ct. App. 2011) (citing Buchanan v. State, 913 N.E.2d 712, 720 (Ind. Ct. App. 2009), trans. denied), trans. denied. This doctrine "essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." Id. (citing Firestone v. State, 838 N.E.2d 468, 471 (Ind. Ct. App. 2005)). The doctrine applies in those situations where a defendant is charged multiple times with one offense or when a defendant is charged with an offense and a lesser included offense. Id. (citing Walker v. State, 932 N.E.2d 733, 737 (Ind. Ct. App. 2010), reh'g denied).[4]

---

[4] In Borum v. State, this court stated:

> We note that in Walker, this court explained the relationship between the

Ind. Code § 35-44-3-3(a) provided:

A person who knowingly or intentionally:

(1)     forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

\* \* \* \* \*

(3)     flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

---

continuous crime doctrine and the prohibition against double jeopardy based upon the Indiana Constitution. 932 N.E.2d at 736. Walker argued that the continuous crime doctrine was not under the purview of double jeopardy; however, we examined Boyd v. State, 766 N.E.2d 396 (Ind. Ct. App. 2002), and held:

> The statutory elements and actual evidence tests [from Richardson] are designed to assist courts in determining whether two separate chargeable crimes amount to the "same offense" for double jeopardy purposes. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. In doing so, the continuous crime doctrine prevents the state from charging a defendant twice for the same continuous offense.

> [Boyd, 766 N.E.2d at 400]. Finding that the defendant subjected the victim to one continuous episode of confinement, we vacated the attempted criminal confinement conviction. Id. at 401.

> Boyd thus clarified that while Indiana's double jeopardy clause prohibits convicting a defendant of two or more distinct chargeable crimes when they constitute the "same offense" under Richardson, it also prohibits convicting a defendant multiple times for the same continuous offense.

951 N.E.2d 619, 630 n.3 (Ind. Ct. App. 2011) (quoting Walker, 932 N.E.2d at 736-737).

11

Ind. Code § 35-44-3-3(b) provided that the offense is a class D felony if "while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person . . . ."

In Armstead, Detective Grace and Officers George and Walker responded to a radio dispatch. 549 N.E.2d at 400-401. Armstead began yelling obscenities at Detective George, Detective Grace told Armstead repeatedly that he could be arrested if he did not calm down, and eventually Detective Grace said Armstead was under arrest and ordered him to turn around to be searched for weapons. Id. at 401. When Armstead failed to comply, Detective Grace attempted to turn him around. Id. At that moment, Armstead hit Officer Walker in the nose, breaking it, and a struggle ensued in which all three policemen were injured. Id. Armstead was "convicted of Class D felony battery and Class D felony resisting law enforcement against Officer Walker, and of Class A misdemeanor resisting law enforcement against Detective Grace and Officer George." Id. On appeal, Armstead argued that he could not be held liable for more than one count of resisting law enforcement when the charges stemmed from a single event. Id. The court held:

> The offenses set forth in [Ind. Code § 35-44-3] do not constitute crimes against the person. Rather, they are interferences with governmental operations constituting offenses against public administration. A person who violates Ind. Code [§] 35-44-3-3 harms the peace and dignity of the State of Indiana and its law enforcement authority. *The harm caused by one incident is the same regardless of the number of police officers resisted. It is the act of resisting duly constituted authority which the statute prohibits, not resisting individual representatives of that authority.*

12

* * * * *

[I]n the context of resisting law enforcement, only one entity is harmed as a result of a single incident, regardless of the number of law enforcement officers involved. *Accordingly, unless more than one incident occurs, there may be only one charge*.

Under Ind. Code [§] 35-44-3-3 any of several acts can constitute a separate offense of resisting law enforcement. Accordingly, when more than one incident has occurred, this court and our supreme court have upheld multiple resisting law enforcement convictions. In Pettit v. State[, 439 N.E.2d 1175 (Ind. Ct. App. 1982)], this court upheld the defendant's two resisting law enforcement convictions when the defendant had threatened one officer with a rifle and later fled by car from several officers. More recently, our supreme court reached a similar decision. In Parks v. State[, 513 N.E.2d 170 (Ind. 1987)], the defendant stole a police car and later attempted to use the car's shotgun against an officer. The court upheld his convictions on two counts of resisting law enforcement, based on the separate and discrete acts of taking the car and using the shotgun.

Unlike Parks and Pettit, the case before us involves only one act; none of the discrete incidents characterizing Parks and Pettit are present. All three of Armstead's resisting law enforcement convictions stem from the *single affray* with the police. Accordingly, two of those convictions must be reversed.

Armstead urges us to reverse his convictions for resisting Officers George and Walker, leaving only the conviction for resisting Detective Grace because he was the officer who actually placed him under arrest. Armstead's distinction is erroneous. . . .

When a defendant harms a single entity as a result of a single incident, we believe he should be answerable for the greatest harm stemming from that single incident. With respect to resisting law enforcement, the felony represents the greatest harm Armstead perpetrated. Accordingly, the felony conviction is affirmed and the misdemeanor convictions are reversed.

Id. at 401-402 (emphases added and footnote and some citations omitted).

In the present case, in Count III of the charging information, the State alleged:

13

[O]n or about the 14th day of July, 2009, . . . James L. Hebner did knowingly or intentionally forcibly resist, obstruct, and/or interfere with Michelle Kircher, a law enforcement officer with the Richmond Police Department, to wit: *fought and/or struggled with Officer Kircher*, while said officer was lawfully engaged in her duties as a law enforcement officer, to-wit: attempting to restrain and/or arrest . . . Hebner, said acts resulting in *bodily injury* to Officer Kircher, to-wit: injured knee and/or physical pain, contrary to Indiana law.

Appellant's Appendix at 48 (emphases added). In Count IV, the State alleged:

[O]n or about the 14th day of July, 2009, . . . James L. Hebner did knowingly or intentionally forcibly resist, obstruct, and/or interfere with a law enforcement officer, to-wit: Officer Austin Lipps of the Richmond Police Department, to wit: *fought, struggled with, and/or punched at Officer Lipps*, while said officer was lawfully engaged in her duties as a law enforcement officer, to-wit: *attempting to arrest, restrain, and/or transport* . . . Hebner, contrary to Indiana law.

Id. at 49 (emphases added). In Count V, the State alleged:

[O]n or about the 14th day of July, 2009, . . . James L. Hebner did knowingly or intentionally forcibly *flee* from law enforcement officers, to-wit: *Officers Michelle Kircher and Austin Lipps* of the Richmond Police Department, after said officers had, by visible or audible means, identified themselves and ordered . . . Hebner to stop, contrary to Indiana law.

Id. (emphases added).

The evidence reveals that, while standing on one side of the apartment building after setting up a perimeter around the building, Officer Kircher observed Hebner run or sprint from an alley next to the building, pursued Hebner on foot, shouted verbal commands for Hebner to stop, and identified herself as a police officer, and Hebner did not comply. Later in the morning, after he had been examined at the hospital and as he was escorted from the hospital by Officers Kircher and Lipps, Hebner slipped his right hand out of the handcuffs, shoved past Officer Lipps, and ran out the hospital door. The officers commanded Hebner to stop, but Hebner did not comply and ran down a steep hill

and into a wooded area, pursued by Officers Lipps and Kircher. After Officer Lipps was able to locate Hebner and the two struggled, Officer Lipps was able to knock Hebner off balance, place him on the ground, and place his hands behind his back. Officer Kircher arrived and assisted Officer Lipps with handcuffing Hebner. Hebner struck both Officers Lipps and Kircher, and Officer Kircher suffered an injury.

With respect to Hebner's convictions under Counts III and IV, we note that the facts alleged in both of those counts pertain to Hebner's act of struggling and fighting, i.e. of forcible resistance, with the officers after running from the hospital into the wooded area as the officers attempted to contain and apprehend him. Similar to the defendant's convictions for resisting law enforcement in Armstead, the facts alleged in Counts III and IV here pertain to or stem from a "single affray" between Hebner and the police officers who were attempting to apprehend him and thus involve only one act.[5] See Armstead, 549 N.E.2d at 402 (noting that the defendant's "resisting law enforcement convictions stem from the single affray with the police"); see also Vest v. State, 930 N.E.2d 1221, 1227 (Ind. Ct. App. 2010) (noting that "the general rule is that in a single, continuous episode of resisting law enforcement, 'only one offense is committed regardless of the number of officers involved'") (citing Touchstone v. State, 618 N.E.2d 48, 49 (Ind. Ct.

_____

[5] This court has noted that there are exceptions to the general rule that only one offense is committed for a single, continuous episode of resisting law enforcement. Vest v. State, 930 N.E.2d 1221, 1227 (Ind. Ct. App. 2010), trans. denied. For instance "a defendant may be convicted on multiple counts stemming from a single incident of resisting if he commits more than one of the acts enumerated under Section 35-44-3-3," see id. (citing Williams v. State, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001) (noting that the defendant fled from officers and also later forcibly resisted those officers)), and we have "upheld multiple convictions when a single incident of resisting results in physical injury to more than one officer," see id. (citing Whaley, 843 N.E.2d at 14-15). However, these exceptions are not applicable with respect to Counts III and IV as the State did not allege that Hebner inflicted or otherwise caused bodily injury to more than one officer and as Hebner's convictions under Counts III and IV did not relate to different acts enumerated under Ind. Code § 35-44-3-3 as both related to Hebner's forcible resistance under subsection (a)(1) of the statute.

15

App. 1993)), trans. denied. As a result, we must reverse either Hebner's conviction under Count III or Count IV.

Although Hebner urges us to reverse his conviction under Count III, we will follow the court's holding in Armstead that "[w]hen a defendant harms a single entity as a result of a single incident, we believe he should be answerable for the greatest harm stemming from that single incident." 549 N.E.2d at 402. Accordingly, we reverse Hebner's conviction and sentence for resisting law enforcement as a class A misdemeanor under Count IV and affirm his conviction for resisting law enforcement as a class D felony under Count III. See Touchstone, 618 N.E.2d at 49 (reversing two of the defendant's three convictions for resisting law enforcement where the defendant fought with three police officers as they tried to arrest him and finding that the defendant's struggle with the three officers constituted a single incident of resistance).

With respect to Hebner's conviction under Count V, we note that the facts alleged in that count related to Hebner's act of fleeing the officers, which occurred when Hebner shoved past Officer Lipps and ran out the hospital door, the officers commanded Hebner to stop, and Hebner did not comply and ran into the wooded area while being pursued by the officers. A defendant may be convicted of multiple counts of resisting law enforcement when he has committed more than one of the acts enumerated under Ind. Code § 35-44-3-3. Williams, 755 N.E.2d at 1186. While Hebner's conviction under Count III related to his act of forcible resistance and inflicting bodily injury under subsections (a)(1) and (b)(1) of Ind. Code § 35-44-3-3, his conviction under Count V related to the act of fleeing under subsection (a)(3) of the statute. As a result, the trial

court properly entered convictions for both Counts III and V. See id. (holding that the defendant fled from two law enforcement officers "after being commanded to stop, in violation of Ind. Code § 35-44-3-3(a)(3)," that he "also forcibly resisted those officers when they caught up with him, and inflicted bodily injury upon them, in violation of Ind. Code § 35-44-3-3(a)(1) and (b)(1)," and that "[t]hus, he perpetrated two separate offenses of resisting law enforcement, and the trial court properly entered convictions for both counts"); see also Shouse v. State, 849 N.E.2d 650, 658 (Ind. Ct. App. 2006) (holding that the defendant's two convictions of resisting law enforcement where one count related to defendant's act of fleeing law enforcement and the other count related that he forcibly resisted or interfered with law enforcement), trans. denied; Arthur v. State, 824 N.E.2d 383, 386 (Ind. Ct. App. 2005) (noting that "resisting law enforcement by fleeing is a different 'species' from resisting law enforcement by force"), trans. denied.

For the foregoing reasons, we reverse Hebner's conviction for resisting law enforcement as a class A misdemeanor under Count IV, and we affirm each of Hebner's other convictions.[6]

Reversed in part and affirmed in part.

BAKER, J., and KIRSCH, J., concur.

---

[6] We note that our reversal of Hebner's conviction under Count IV does not impact Hebner's aggregate sentence as the trial court ordered the sentence under Count IV to be served concurrently with the sentences imposed under the other counts.