**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT M. KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1303-CR-105 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1006-FB-19

**November 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Robert M. King appeals his convictions for three counts of criminal confinement, as Class B felonies, following a jury trial.[1]  King presents the following issues for review:

1.      Whether the trial court violated double jeopardy principles under the Indiana Constitution when it entered judgment of conviction on two counts of criminal confinement, as Class B felonies, in which King's wife was the victim.

2.      Whether the evidence is sufficient to support his conviction for criminal confinement with regard to his child W.K.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of June 3, 2010, a very intoxicated King and his wife, C.K., were in their apartment in Elkhart. Also in the home were their two children, M.K., a daughter, and W.K., a son.  King and C.K. began arguing about money missing from their budget. King demanded to know where sixty dollars had gone, and C.K. denied any knowledge of the missing money.  C.K. went to bed at 12:30 a.m., but after she fell asleep King woke her and attempted to resume the argument.   C.K. told him to leave her alone, but he placed a leg or knee on her, put a knife to her throat, and threatened to slit her throat if she did not tell him where the missing money was.  C.K. was frightened and did not believe she could leave the room at that point.

W.K. woke when he heard his mother scream.  He went into his parents' bedroom, where he saw his father holding a knife to C.K.'s neck.  W.K. asked what was going on, which startled King.  King rose off C.K. and went to a dresser on the other side of the

---

[1]  King was also convicted of attempted aggravated battery, as a Class B felony, but he does not appeal that conviction.

bed. W.K. knew that his father kept a gun in that dresser, so W.K. began to back out of the room. C.K. told W.K. to go back to his room and lock his door, which he did. Wielding the gun, King walked to W.K.'s bedroom door and told him to come out of his room so he "could put a bullet in [W.K.'s] head," but W.K. did not open the door. Transcript at 68. W.K. later left his room through the window and went to a friend's home, staying there until later the following day.

Still holding the gun, King told C.K. to go to the kitchen and made her sit on the floor. C.K. sat on the floor in front of the refrigerator. She did not believe she could leave because King was holding a handgun, waving the butt end at her, and he told her she was not going anywhere. King continued to demand to know where the money from their budget was. At some point, M.K. woke and told King to leave C.K. alone. King told M.K. to go back to her room, and she did. When M.K. realized King was angry about missing money, she retrieved money from her room and tried to give it to him, but he refused to take it. King also told M.K. to have W.K. come out of his room, but there was no answer when M.K. knocked on W.K.'s door.

While King and M.K. were in the hallway briefly, C.K. fled the kitchen and attempted to leave, but King "slammed the door and told [her] she couldn't leave" and then "took her by the hair and threw her back to the kitchen floor." Id. at 149, 151. C.K. began to cry. King then took some lighter fluid and said that if C.K. did not tell him where the money was, he would pour the fluid on her and set her on fire. When C.K. continued to deny knowing anything about the missing money, King "sloshed" the fluid around, and some of it landed on C.K.'s arm. Id. at 40. King then took a lighter, lit it,

3

and threw it toward C.K., but the flame extinguished when he released the lighter. M.K. telephoned police, and when officers arrived they arrested King.

The State charged King with four counts of criminal confinement, as Class B felonies, and one count of attempted aggravated battery, as a Class B felony. A jury trial was held January 7 and 8, 2013. At the close of evidence, King moved for directed verdicts on the counts alleging criminal confinement of M.K. and W.K. and on the attempted aggravated battery count. Following argument by counsel, the trial court denied the motion. The jury returned guilty verdicts on all counts except the one alleging criminal confinement of M.K., for which it acquitted him. The trial court sentenced King to twelve years for each criminal confinement count and two years for attempted aggravated battery, to be served concurrently. King now appeals.

## DISCUSSION AND DECISION

### Issue One: Continuing Crime Doctrine

King contends that his convictions violate the common law double jeopardy principle known as the continuing crime doctrine. We have explained the continuing crime doctrine as follows:

> "The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." Riehle v. State, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), trans. denied. "[T]he continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy." Walker v. State, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). As we have explained:

> > The statutory elements and actual evidence tests [of double jeopardy, as described in Richardson v. State, 717 N.E.2d 32 (Ind. 1999),] are designed to assist courts in determining

4

> whether <u>two separate[ly] chargeable crimes</u> amount to the "same offense" for double jeopardy purposes. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct[,] chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single[,] chargeable crime. In doing so, the continuous crime doctrine prevents the state from charging a defendant twice for the same continuous offense.
>
> <u>Boyd v. State</u>, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002) (emphasis original)[, <u>trans. denied</u>]. That is, "while Indiana's double jeopardy clause prohibits convicting a defendant of two or more distinct[,] chargeable crimes when they constitute the 'same offense' . . . , it also prohibits" charging a defendant "multiple times for the same continuous offense." <u>Walker</u>, 932 N.E.2d at 736-37.

<u>Chavez v. State</u>, 988 N.E.2d 1226, 1228 (Ind. Ct. App. 2013), <u>trans. denied</u>.

Here, King contends that his convictions for two counts of Class B felony criminal confinement of C.K. were "one continuous criminal act justifying only one confinement conviction." Appellant's Brief at 7. Specifically, he argues that there was

> no distinction between the confinement that took place in the bedroom and the confinement of [C.K.] in the kitchen. Although [King] had two different weapons for each moment, it cannot be said that [C.K.] was ever free from detention and at liberty between when she was in the bedroom to when [King] moved her to the kitchen.

<u>Id.</u> at 9. We cannot agree.

To prove criminal confinement, as a Class B felony, as charged in the counts related to C.K., the State was required to show that King knowingly or intentionally confined C.K. while King was armed with a deadly weapon. Ind. Code § 35-42-3-3(a)(1), (b)(2)(A). "'A confinement ends when the victim both feels free and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established.'" <u>Penrod v. State</u>, 810 N.E.2d 345, 346 (Ind. 2004) (quoting

5

Boyd v. State, 766 N.E.2d at 400).  King contends that there was "no distinction between the confinement that took place in the bedroom and the confinement of [C.K.] in the kitchen."  Appellant's Brief at 9.  But King ignores the brief time during which C.K. fled the kitchen while he was in the hallway with M.K.  C.K. was free during that time, as shown by the fact that King had to prevent her from fleeing the apartment when he slammed the front door, took her by the hair, and threw her back down in the kitchen.

The first period of confinement began when King put the knife to C.K.'s throat in their bedroom and continued until C.K. fled the kitchen while King was in the hallway. The second confinement began when King grabbed the momentarily free C.K. by the hair and threw her back down on the kitchen floor.  King has not shown that the continuous crime doctrine is applicable here.  As such, we affirm his convictions for two counts of criminal confinement, as Class B felonies, with regard to C.K.

### Issue Two:  Directed Verdict

King also contends that the trial court erroneously denied his motion for judgment on the evidence because the State had failed to prove he committed criminal confinement, as a Class B felony, with regard to W.K.  As this court has explained:

> It is thoroughly settled in Indiana that a trial court may grant a motion for a judgment on the evidence only "where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused."  State v. Patsel, 240 Ind. 240, 245, 163 N.E.2d 602, 604 (1960). See also State v. Casada, 825 N.E.2d 936, 937-938 (Ind. Ct. App. 2005). On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence.  Id. at 937 (citation omitted).

> "When the trial court considers entering judgment on the evidence, it must view the evidence in a light most favorable to the party against whom

6

judgment on the evidence would be entered." Id. A trial court may not invade the province of the jury by weighing the evidence presented or the credibility of witnesses. Patsel, 163 N.E.2d at 604. In fact, our Supreme Court has held that a trial court is "not authorized under Trial Rule 50, in a criminal case, to consider whether the evidence presented could be viewed by a reasonable jury as constituting proof beyond a reasonable doubt." State v. Goodrich, 504 N.E.2d 1023, 1024 (Ind. 1987).

State v. Taylor, 863 N.E.2d 917, 919 (Ind. Ct. App. 2007). Obviously, "if the evidence is sufficient to support a conviction on appeal, then the trial court's denial of a Motion for a Directed Verdict cannot be in error." Huber v. State, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004).

Here, the State alleged that King committed Class B felony criminal confinement of W.K. because the State showed "confinement" of that child. As used in the criminal confinement statute, "confine" means "to substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1. King makes much of the fact that C.K., not King, told W.K. to return to his room. The State counters that there was also evidence that King told W.K. to go to his room. But we need not determine whether W.K.'s return to his bedroom constitutes confinement under Section 35-42-3-3(a)(1). After W.K. had returned to his room and locked the door, an armed King told W.K. to come out so he "could put a bullet in [W.K.'s] head," but W.K. did not open the door. Transcript at 68. Indeed, W.K. left the apartment through his bedroom window instead of through the door. The evidence shows that King substantially interfered with W.K.'s liberty to leave his room and move about the apartment.

King's focus on whether he told W.K. to go to his room is misplaced. To the extent he argues that the evidence is insufficient in general to support his conviction with

7

regard to W.K., King asks us to reweigh the evidence, which we cannot do.  See Jones v.

State, 783 N.E.2d 1132, 1139 (Ind. 2003).  We affirm King's conviction for confinement

with regard to W.K.

Affirmed.

MATHIAS, J., and BROWN, J., concur.