## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2016, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan J. Tipton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 25, 2016 <br><br> Court of Appeals Case No. 35A05-1511-CR-1986 <br><br> Appeal from the Huntington Circuit Court <br><br> The Honorable Thomas M. Hakes, Judge <br><br> Trial Court Cause No. 35C01-1412-F4-277 |

**Crone, Judge.**

# Case Summary

Jonathan J. Tipton and his cousin broke into Colton Miller's apartment and beat him with a tire iron. A jury convicted Tipton of level 1 felony burglary resulting in serious bodily injury and level 5 felony battery with a deadly weapon. The trial court sentenced him to consecutive terms of forty years for burglary and five years for battery, with twenty-five years executed and twenty years suspended to probation. On appeal, Tipton claims that his convictions violate Indiana double jeopardy principles and that the burglary and battery were a single continuous crime. He also claims that his sentence is inappropriate in light of the nature of the offenses and his character. We conclude that Tipton's convictions violate Indiana double jeopardy principles, and therefore we remand with instructions to reduce the battery conviction to a class B misdemeanor and resentence him accordingly. We further conclude that the continuous crime doctrine is inapplicable. Finally, we conclude that Tipton has failed to establish that his burglary sentence is inappropriate, and therefore we affirm it.

# Facts and Procedural History

The facts most favorable to the verdicts are that Tipton worked with Miller at a factory in Huntington. On October 2, 2014, Miller invited Tipton to his apartment to drink beer with him and Cody Smith. Tipton arrived around midnight and drank beer until he and Miller started fighting. Miller and Smith pushed Tipton downstairs and out of the apartment and locked the door.

[3] Tipton drove to the apartment that he shared with his cousin Andrew Barrus and Barrus's girlfriend Andrea Reynolds. According to Reynolds, Tipton was "loud" and "drunk" and "cursing out" Miller. Tr. at 373. Tipton and Miller exchanged text messages and threatened to beat each other up. Tipton texted that "he would be outside," and Miller responded that if Tipton came over Miller "was calling the cops." *Id*. at 169. Tipton told Barrus and Reynolds that he "wanted to go back over and kick [Miller's] ass." *Id*. at 377. Barrus and Reynolds calmed Tipton down, but when Miller stopped responding to Tipton's texts, Tipton "was like on a whole new warpath." *Id*. Eventually, Barrus agreed to go to Miller's apartment with Tipton. Tipton "was too drunk to drive and [Barrus] never drove," so Reynolds agreed to drive them in Tipton's black Dodge Charger, which was "fast" and "silent." *Id*. at 379, 381. Before they left their apartment, Reynolds paused their surveillance camera system so that it would not record them leaving the premises. Tipton directed Reynolds to Miller's apartment, and she was told to park down the street with the lights off and the engine running.

[4] Inside the apartment, Miller and Smith heard someone pounding on the downstairs door. Smith, who had an outstanding warrant, opened Miller's bedroom window and crawled out onto "a little slanted roof." *Id*. at 104. He closed the window, jumped off the roof, and ran down the street. A few minutes later, Miller heard window blinds rustling in his bedroom and saw Tipton "coming out of the hallway into the living room." *Id*. at 174. Miller hit Tipton, and the two started "wrestling around." *Id*. Miller then saw Barrus,

who hit him on top of the head with a tire iron. Miller fell onto a couch and tried to protect his head and face with his arms. Tipton and Barrus repeatedly punched and kicked Miller and struck him on the head with the tire iron. Miller experienced "an intense pain" that he had never felt before and "thought [he] was gonna die." *Id*. at 178. Barrus "said we have to go," and Tipton "kicked [Miller] a few more times" and landed a "really solid and blunt" blow to his head that "wasn't a normal hit" before leaving the apartment. *Id*. at 179.

[5] Miller's wounds kept bleeding through t-shirts that he wrapped around his head, so he had his sister take him to the hospital. Miller was treated and kept overnight in the emergency room. He had lacerations to his scalp, face, and mouth that required stitches, staples, and tissue adhesive. He also had numerous abrasions and bruises on his face, arms, and torso, as well as swelling under his scalp. Miller experienced "intense" pain in his head that "actually got worse through the days." *Id*. at 178. As a result of the attack, Miller "can't pay attention to anything anymore" and has "memory issues." *Id*. at 189.

[6] Tipton, Barrus, and Reynolds returned to their apartment. Tipton and Barrus changed their clothes, used the washing machine, and hid their shoes, which they eventually burned. They talked about beating Miller's head like a punching bag and laughed about kicking him so hard "they thought they broke his ribs." *Id*. at 393. They also developed alibis and talked about deleting text messages between Tipton and Miller.

[7]     The State charged Tipton with level 1 felony burglary resulting in serious bodily injury and level 5 felony battery with a deadly weapon. A jury found him guilty as charged. The trial court imposed consecutive sentences of forty years for burglary and five years for battery, with twenty-five years executed and twenty years suspended to probation. This appeal followed.

## Discussion and Decision

## Section 1 – Tipton's convictions violate Indiana double jeopardy principles.

[8]     Tipton argues, and the State concedes, that his burglary and battery convictions violate Indiana double jeopardy principles.[1] Article 1, Section 14 of the Indiana Constitution states, "No person shall be put in jeopardy twice for the same offense." Indiana courts "have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth" in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002); *see also Richardson*, 717 N.E.2d at 56 (recognizing that "to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing particular additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime. *See Campbell v. State*, 622 N.E.2d 495, 500 (Ind. 1993) (reducing a Class C enhancement to a battery

---

[1] Tipton's double jeopardy argument misses the mark, but we agree with the State that remand is necessary for the reasons given in its brief.

conviction because the very same serious bodily injury that was the basis of the Class C enhancement was also the basis of a Class A enhancement to a burglary conviction.") (Sullivan, J., concurring). In *Campbell*, the defendant was charged with and convicted of class C felony battery based on his use of a deadly weapon as well as class B felony burglary based on serious bodily injury to the victim. Our supreme court agreed with this Court's decision to remand with instructions to reduce the class C felony battery conviction to a class B misdemeanor based on state and federal double jeopardy violations: "Although the battery information alleged use of a deadly weapon and the burglary information alleged serious bodily injury, the basis for the elevation of both crimes was the same slashing of [the victim's] face." *Campbell*, 622 N.E.2d at 500.

[9]    Here, Tipton's burglary conviction was enhanced from a level 5 felony to a level 1 felony based on serious bodily injury to Miller, i.e., extreme pain. *See* Ind. Code § 35-43-2-1(4) (burglary statute); Appellant's App. at 50 (charging information). And Tipton's battery conviction was enhanced from a class B misdemeanor to a level 5 felony based on Tipton's use of a deadly weapon, i.e., a tire iron. *See* Ind. Code § § 35-42-2-1(f) (battery statute); Appellant's App. at 51 (charging information). The basis for the elevation of both crimes was the same striking of Miller with the tire iron, which is impermissible under

*Campbell*.[2]  Consequently, the proper remedy is to remand with instructions to reduce the level 5 felony battery conviction to a class B misdemeanor and resentence Tipton accordingly.  *See Sanders v. State*, 734 N.E.2d 646, 652 (Ind. Ct. App. 2000) ("When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation.  In the alternative, a reviewing court may vacate one of the convictions to eliminate a double jeopardy violation.  In making that determination, we must be mindful of the penal consequences that the trial court found appropriate.") (citations omitted), *trans. denied*.  The trial court need not hold a sentencing hearing on remand.  *Cf.* Ind. Code § 35-38-1-3 ("Before sentencing a person for a *felony*, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing.") (emphasis added).

## Section 2 – The continuous crime doctrine is inapplicable.

[10]  Tipton also claims that he is entitled to relief pursuant to the continuous crime doctrine, which is "a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same

---

[2] In *Pierce*, Justice Boehm noted,

> Although *Campbell* was explicitly said to be superseded in the Court's opinion in *Richardson*, 717 N.E.2d at 49 n.36, only Justice Dickson and [then-Chief Justice Shepard] appear to have taken that view.  Justice Sullivan concurred in *Richardson*, but authored a separate opinion that cited *Campbell*, apparently with approval.  717 N.E.2d at 56.  The other two Justices [Selby and Boehm] did not comment on *Campbell*, but cited with approval other cases following the same doctrine.

761 N.E.2d at 830 n.4.

offense." *Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015). "'The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime.'" *Id*. (quoting *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002)). Our legislature, not the courts, "defines when a criminal offense is 'continuous,' e.g. not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences." *Id*. Whether two offenses are a continuous crime is a question of law, which we review de novo. *Id*.

[11] Tipton cites no relevant authority for the proposition that a burglary and a battery amount only to a single chargeable crime. In *Hines*, our supreme court disagreed with the notion that "the continuous crime doctrine may be judicially extended to two distinct criminal offenses[.]" *Id*. at 1220. Here, the burglary was complete when Tipton broke into Miller's apartment, and his battery of Miller was a distinct offense. *See* Ind. Code §§ 35-43-2-1 (defining burglary as the breaking and entering of another person's building or structure with intent to commit a felony in it), 35-42-2-1 (defining battery as the knowing or intentional touching of another person in a rude, insolent, or angry manner);[3] *see also Williams v. State*, 771 N.E.2d 70, 75 (Ind. 2002) (holding that defendant's burglary and intimidation convictions did not violate double jeopardy

---

[3] Tipton emphasizes that he was charged with burglary resulting in serious bodily injury and battery with a deadly weapon that was used to inflict the injury, but the dispositive fact is that the burglary was complete when he broke into Miller's apartment.

principles: "When Williams broke into the apartment, the burglary was complete. Williams then put a gun to [the victim's] head—an act separate and distinct from the act that supported the burglary conviction."). Consequently, we conclude that the continuous crime doctrine is inapplicable.

## Section 3 – Tipton has failed to establish that his burglary sentence is inappropriate.

Finally, Tipton asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. "[T]he question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). "When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence is suspended." *Vermillion v. State*, 978 N.E.2d 459, 469 (Ind. Ct. App. 2012).

Tipton bears the burden of persuading us that his sentence is inappropriate. *Id.* at 468-69.

[13]  "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). Tipton was convicted of burglary resulting in serious bodily injury, a level 1 felony, which carries a sentencing range of twenty to forty years and an advisory sentence of thirty years. Ind. Code § 35-50-2-4. The trial court sentenced Tipton to forty years, with sixteen years suspended to probation.[4] On remand, Tipton will be sentenced for battery as a class B misdemeanor, which carries a maximum sentence of 180 days' imprisonment. Ind. Code § 35-50-3-3.

[14]  Tipton acknowledges that his offenses were violent, but argues that "Miller testified that he initiated the fight with Tipton that preceded the burglary." Appellant's Br. at 11. After Tipton was ejected from Miller's apartment, he had an opportunity to go home, cool off, and end the dispute. Instead, the intoxicated Tipton enlisted Barrus to join him in breaking into Miller's apartment and pummeling him with their feet, fists, and a tire iron.[5] This brutal

---

[4] Tipton complains that he received the maximum sentence but fails to acknowledge that more than a third of it was suspended.

[5] Tipton states that "[t]here was no testimony that [he] himself used the tire iron to strike Miller." Appellant's Br. at 12. As noted above, Miller testified that Tipton landed a "really solid and blunt" blow to his head that "wasn't a normal hit" before leaving the apartment. Tr. at 179. We agree with the State that a reasonable inference may be drawn that Tipton used the tire iron "to deliver his parting blow" and that, in any event, "Tipton called the shots and worked in tandem with Barrus." Appellee's Br. at 17.

attack landed Miller in the hospital with numerous lacerations and abrasions, and it also caused intense pain and lasting attention and memory deficits. The nature of Tipton's offenses supports an enhanced sentence far above the advisory term.

[15]   The same is true for Tipton's character. He tried to cover up his involvement in the crimes and laughed about his vicious assault on the outnumbered and helpless Miller. Tipton, who was twenty-three at the time of the attack, had been adjudicated a delinquent for conversion, strangulation, auto theft, criminal mischief, and operating a motor vehicle without a license. As an adult, he had been convicted of both class A and class B misdemeanor battery. Obviously, Tipton has failed to learn any lessons from his numerous encounters with the criminal justice system and has become only more violent over time.[6] Tipton has failed to persuade us that his forty-year burglary sentence is inappropriate, and therefore we affirm it. As a final consideration, we would have affirmed Tipton's original forty-five-year sentence, so any time that he might receive for his class B misdemeanor battery conviction on remand will not render his aggregate sentence inappropriate.

---

[6] Tipton observes that he had a daughter who was not yet born at the time of his offenses and that he pays child support. Presumably, Tipton knew that he was going to be a father and committed the offenses anyway, which reflects unfavorably on his character. He also observes that the trial court "did note [his] remorse for the offenses[.]" Appellant's Br. at 12. In fact, the trial court stated, "[T]he fact that you indicate today that you are remorseful, I'll accept the fact that you said that, but the Court always wonders whether in fact you are remorseful for the act, or remorseful for the fact that you're sitting here today looking at a minimum of twenty years." Tr. at 630.

Affirmed in part and remanded in part.

Najam, J., and Robb, J., concur.