**Duane ARTHUR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0405–CR–276.

Court of Appeals of Indiana.

March 22, 2005.

Transfer Denied June 1, 2005.

**384**

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After leading the police on a car chase and then fleeing from them on foot, Duane Arthur was convicted of two counts of resisting law enforcement and one count of operating a motor vehicle while privileges are forfeited for life. We find that Arthur's convictions for fleeing in a vehicle and fleeing on foot cannot both stand because they violate double jeopardy principles. Additionally, we find that Arthur should have known his driving privileges were suspended based on his two previous convictions for driving while his privileges were forfeited for life. Therefore, we reverse and remand in part and affirm in part.

### Facts and Procedural History

As Officer Darren McGuire of the Beech Grove Police Department was patrolling around 11:30 p.m. in May 2002, he observed a Chevy truck being driven in an erratic manner. Because of this erratic driving and the concentration of bars in the area, Officer McGuire suspected that the driver—later determined to be Arthur—might be intoxicated and followed the truck for a couple of miles. While Officer McGuire was still behind the vehicle, Arthur turned without signaling. Based on this infraction, Officer McGuire initiated a stop of the truck. As Officer McGuire—in full police uniform—approached the rear of the truck, Arthur sped off. Officer McGuire returned to his car and pursued the truck with his emergency lights and siren activated. Arthur crashed the truck into a fence, exited the truck, and then fled on foot. The police apprehended Arthur one and one-half blocks away. Officer McGuire obtained Arthur's license and ran a check on it. This check revealed that Arthur was a

habitual traffic violator and that his driving privileges had been suspended for life.

The State charged Arthur with Operating a Motor Vehicle While Privileges Are Forfeited for Life as a Class C felony,[1] Resisting Law Enforcement as a Class D felony,[2] and Resisting Law Enforcement as a Class A misdemeanor.[3] Arthur waived his right to a jury trial, and a bench trial ensued. As part of its case-in-chief, the State presented certified copies of a charging information for "Operating a Motor Vehicle After License Forfeited for Life," dated May 7, 1999, and "Abstract of Judgment," dated September 24, 1999, showing that Arthur was convicted of the charged crime. Exhibits p. 20–21, 24 (capitalization omitted). The State also presented a certified copy of a charging information for "Driving Motor Vehicle after Lifetime Forfeiture," dated December 21, 2001, to which Arthur subsequently pled guilty. *Id.* at 8–10 (capitalization omitted). Based on the foregoing, the trial court found Arthur guilty as charged. Arthur now appeals.

### Discussion and Decision

Arthur raises two issues on appeal. First, he argues that the trial court erred by entering judgment of conviction on both counts of resisting law enforcement because his act of fleeing in a vehicle and then on foot constituted one continuous act. Second, he alleges that there is insufficient evidence to support his conviction for operating a motor vehicle while privileges are forfeited for life because the State failed to establish that he knew or should have known his driving privileges were forfeited for life. We address each argument in turn.

**1.** Ind.Code § 9–30–10–17.

**2.** Ind.Code § 35–44–3–3(b)(1)(a).

### I.  Resisting Law Enforcement

Arthur contends that the trial court erred by entering judgment of conviction on two counts of resisting law enforcement because both counts were based on one continuous incident of fleeing from the police. Essentially, this argument is a double jeopardy argument based on the federal constitution, which prohibits imposition of two punishments for a single offense arising from one set of operative circumstances. *See Idle v. State,* 587 N.E.2d 712, 715 (Ind.Ct.App.1992), *trans. denied.*

Here, Arthur was convicted of two counts of resisting law enforcement—one count for fleeing the officers on foot and one count for fleeing the officers in a vehicle. A person commits the offense of resisting law enforcement as a Class A misdemeanor when he flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop. Ind.Code § 35–44–3–3(a)(3). The offense becomes a D felony if, while committing it, the person uses a vehicle. I.C. § 35–44–3–3(b)(1)(A).

The facts upon which Arthur's convictions are based show that Arthur sped off in his truck as Officer McGuire—in full uniform—approached Arthur's vehicle after initiating a traffic stop. When Arthur crashed the truck into a fence, he bailed out of the truck and then led the police on a foot chase. Arthur does not dispute that he fled from officers both in a vehicle and on foot. Instead, he argues that there was only one continuous act of fleeing, and thus, the trial court should not have entered judgment of conviction on the two separate counts of resisting law enforcement.

**3.** Ind.Code § 35–44–3–3(a)(3).

This argument is similar to those made in the context of criminal confinement. *See, e.g., Boyd v. State,* 766 N.E.2d 396 (Ind.Ct.App.2002); *Idle,* 587 N.E.2d at 712. In *Idle,* we *sua sponte* found the entry of judgment on two counts of confinement of the same victim violated double jeopardy. *Idle,* 587 N.E.2d at 718. Idle first confined his victim by removing her from the front door to a bedroom at gunpoint, which violated Indiana Code § 35–42–3–3(a)(2), and then he confined his victim in the bedroom by restraint, which violated Indiana Code § 35–42–3–3(a)(1). At no time did Idle's victim escape from his detention. In deciding whether both convictions could stand, we were guided by the following inquiry: "whether [Indiana Code § ] 35–42–3–3 defines two separate species of confinement which may properly divide one continuous confinement episode into two distinct crimes for purposes of multiple convictions." *Idle,* 587 N.E.2d at 716. We answered this inquiry in the negative, and thus, we determined that there was only one continuous episode of confinement, rather than two distinct confinements. We continued by concluding that the two convictions for confinement violated double jeopardy because "one continuous confinement may result in only one confinement conviction, notwithstanding that the defendant engaged in two different acts, one proscribed in subsection one, and the other in subsection two." *Id.*

Nearly ten years later we revisited this issue in *Boyd,* reaffirming our holding in *Idle. Boyd* was convicted of and sentenced for criminal confinement and attempted criminal confinement based on his role in confining a victim at gunpoint and then attempting to shove the victim into a car.

We determined that the victim was "continuously confined" during the actions underlying the two separate convictions. *Boyd,* 766 N.E.2d at 401. In vacating Boyd's conviction and sentence for attempted criminal confinement on double jeopardy grounds, we found it to be of no consequence that Boyd's conduct satisfied both the restraint and removal elements of the confinement statute. *Id.* Rather, we found the determinative factor to be that "there was but one continuous period of confinement, and both of Boyd's convictions flowed from that offense." *Id.*

The State directs our attention to *Williams v. State,* 755 N.E.2d 1183, 1185 (Ind.Ct.App.2001), for the proposition that the trial court properly entered judgment of conviction for two separate counts of resisting law enforcement. The defendant in *Williams* fled from law enforcement officers in violation of Indiana Code § 35–44–3–3(a)(3), and when the officers caught him, he forcibly resisted the officers for close to fourteen minutes, kicking, hitting, and biting them in violation of Indiana Code § 35–44–3–3(a)(1) and (b)(1)(B).[4] In *Williams,* we concluded that entry of judgment of conviction on the two separate counts of resisting did not violate double jeopardy. We agree with this conclusion. To borrow language from *Idle,* resisting law enforcement by fleeing is a different "species" from resisting law enforcement by force. *Cf. Ajabu v. State,* 704 N.E.2d 494, 495 (Ind.Ct.App.1998) (requiring some form of violent action directed toward another to establish resisting law enforcement by force) *with Wellman v. State,* 703 N.E.2d 1061, 1063 (Ind.Ct.App.1998) (defining "flight" for purposes of the resisting law enforcement statute as "a knowing

---

4. Indiana Code § 35–44–3–3(b)(1)(B)—like Indiana Code § 35–44–3–3(a)(1)(A), which is at issue in this case—serves to enhance the penalty for the offense of resisting law enforcement if the action constituting resisting law enforcement is conducted in a particular manner.

attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop").

■ To the contrary, we cannot say that resisting law enforcement by fleeing in a vehicle is a different "species" from resisting law enforcement by fleeing on foot. Rather, fleeing by means of a vehicle merely serves to enhance the penalty for fleeing. *See* Ind.Code § 35–44–3–3(b)(1)(A) (setting forth that the offense of resisting law enforcement by fleeing is a Class D felony if the person uses a vehicle to commit the offense). Stated otherwise, whether on foot or in a vehicle, the same "species" of behavior is proscribed: fleeing. Here, Arthur committed one continuous act of fleeing, albeit by two different means: Arthur began fleeing in a truck, and when he crashed the truck, he immediately began to flee on foot without first being intercepted by the police. Because we find his actions of fleeing by vehicle and then on foot constitute one continuous act of resisting law enforcement, we find that convictions on both counts cannot stand.[5] We hereby remand this case to the trial court to vacate Arthur's conviction for Class A misdemeanor resisting law enforcement.

## II. Operating While Privileges Are Forfeited for Life

■ Arthur also claims that there is insufficient evidence in support of his conviction for operating a motor vehicle while his driving privileges were forfeited for life. Arthur was convicted pursuant to Indiana Code § 9–30–10–17, which provides that "[a] person who operates a motor vehicle after the person's driving privileges are forfeited for life under section 16 of this chapter,[6] IC 9–4–13–14 (repealed April 1, 1984),[7] or IC 9–12–3–1 (repealed July 1, 1991) [8] commits a Class C felony." When reviewing the claim of sufficiency of

---

5. The State also relies on *Echols v. State*, 722 N.E.2d 805 (Ind.2000). To the extent that the State argues that our supreme court's decision in *Echols* dictates a different result, we note that the only issue before the *Echols* court was sufficiency of the evidence.

6. This section provides:
(a) A person who operates a motor vehicle:
(1) while the person's driving privileges are validly suspended under this chapter or IC 9–12–2 (repealed July 1, 1991) and the person knows that the person's driving privileges are suspended; or
(2) in violation of restrictions imposed under this chapter or IC 9–12–2 (repealed July 1, 1991) and who knows of the existence of the restrictions;
commits a Class D felony.
(b) Service by the bureau of notice of the suspension or restriction of a person's driving privileges under subsection (a)(1) or (a)(2):
(1) in compliance with section 5 of this chapter; and
(2) by first class mail to the person at the last address shown for the person in the bureau's records;

establishes a rebuttable presumption that the person knows that the person's driving privileges are suspended or restricted.
(c) In addition to any criminal penalty, a person who is convicted of a felony under subsection (a) forfeits the privilege of operating a motor vehicle for life. However, if judgment for conviction of a Class A misdemeanor is entered for an offense under subsection (a), the court may order a period of suspension of the convicted person's driving privileges that is in addition to any suspension of driving privileges already imposed upon the person.

7. This section and Indiana Code § 9–4–13–14.5, now sections 9–30–10–16 and 9–30–10–17, related to the penalties for operating a motor vehicle while privileges were suspended or forfeited for life.

8. This section, now section 9–30–10–16, related to the crimes of operating a motor vehicle while privileges are suspended or while privileges are forfeited for life.

the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the judgment and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

■ To sustain a conviction under this statute, the State must prove that Arthur (1) operated a motor vehicle; (2) after his driving privileges were forfeited for life; and (3) he knew or should have known that his driving privileges were forfeited. *Austin v. State*, 700 N.E.2d 1191, 1192 (Ind.Ct. App.1998), *trans. denied.* Arthur claims that the State failed to prove that he knew his driving privileges were forfeited for life; specifically, he alleges that because "he believed that there were errors in his Bureau of Motor Vehicles Driving Record and that he did not have a prior conviction for Operating A Motor Vehicle After License Forfeited For Life," Appellant's Br. p. 9, he did not possess the requisite knowledge to sustain his current conviction for Operating a Vehicle While Privileges Are Forfeited for Life.

Despite Arthur's testimony about what he believed to be his record, the evidence unequivocally establishes that in 1999 Arthur was convicted of Operating a Motor Vehicle After License Forfeited for Life. Moreover, in 2001, the State charged Arthur with Driving Motor Vehicle After Lifetime Forfeiture, and he subsequently pled guilty to this charge. In light of Arthur's accumulation of two previous convictions under Indiana Code § 9-30-10-17—Operating Motor Vehicle While Privileges Are Forfeited for Life—we cannot say that the State failed to establish that Arthur knew or should have known his driving privileges had been forfeited for life.

Reversed and remanded in part and affirmed in part.

KIRSCH, C.J. and NAJAM, J., concur.