**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 04 2013, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ZACHARY A. WITTE**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW J. BULLINER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1211-CR-472 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No.  02D06-1202-FD-183

**June 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Matthew J. Bulliner appeals his Class D felony and Class A misdemeanor convictions for resisting law enforcement. Bulliner contends that his convictions violate double-jeopardy principles. Because we conclude that his convictions do not violate double jeopardy, we affirm.

**Facts and Procedural History**

Around 11:00 p.m. on February 1, 2012, Fort Wayne Police Department Sergeant Kenneth Clement was on routine patrol when he noticed a car driving down a one-way street in the wrong direction. Sergeant Clement immediately activated his police car's lights and siren and positioned his car to intercept the other car. The other car came to a stop about twenty feet from Sergeant Clement's police car. Sergeant Clement began to call in a traffic stop on his police radio. But before he could finish the call, the other car began moving toward the police car. Sergeant Clement moved the police car to prevent the other car from maneuvering past him and shined a spotlight into the car.

The other car kept moving forward until it hit the police car. Sergeant Clement drew his gun and brought it up so it was visible to anyone in the other car. When he peered inside the other car, Sergeant Clement saw an angry-looking Bulliner. Tr. p. 93. Then Sergeant Clement saw what he thought was "some type of light or metal, as if something [was] coming up from below the door, the window frame." *Id.* Sergeant Clement fired one gunshot. The shot shattered the windows in both cars. Bulliner immediately accelerated and drove off at a high rate of speed, still going the wrong way

2

on the one-way street. Sergeant Clement pursued Bulliner and called for backup. Bulliner only got as far as three blocks, however, before he crashed into a green SUV.

Bulliner got out of his car, and Sergeant Clement observed that he was "very animated, very agitated[,] and angry." *Id.* at 98. Sergeant Clement also observed that Bulliner was a very big man, over six feet tall, and he looked like "someone [] getting ready to fight." *Id.* at 98-99. Sergeant Clement again drew his gun. Bulliner took off his jacket and shirt, threw them on the ground, and began shouting that Sergeant Clement had hit Bulliner's car. Bulliner then charged at Sergeant Clement. Sergeant Clement yelled at Bulliner to get on the ground or he would shoot him. Bulliner then stopped, turned sideways, and began walking in a circle while talking to himself, repeating that the accident was Sergeant Clement's fault, not his.

Sergeant Clement again called for backup and ordered Bulliner to get on the ground. Bulliner did not listen and began to walk along the sidewalk. He then took off jogging through an open field. Sergeant Clement followed him, calling for him to stop, but he did not try to tackle Bulliner due to his large size. Eventually, backup arrived and officers caught Bulliner. Bulliner prevented the officers from handcuffing him by pulling his arms back and placing his hands tightly in front of him. Ultimately, Bulliner had to be tased in order to get him to comply with the officers' orders.

The State charged Bulliner with: Count I, Class D felony resisting law enforcement (fleeing authorities by car); Count II, Class A misdemeanor resisting law enforcement (fleeing authorities by foot); Count III, Class A misdemeanor resisting law enforcement (forcibly resisting arrest); Count IV, Class B misdemeanor failure to stop

3

after accident resulting in damage to unattended vehicle; and Count V, Class C misdemeanor failure to stop after accident resulting in damage to vehicle. Appellant's App. p. 14-18. A jury found Bulliner guilty of all charges. He was sentenced to three years for the Class D felony conviction and concurrent one-year, 180-day, and sixty-day sentences on his Class A, B, and C misdemeanor convictions, respectively.

Bulliner now appeals. He challenges only his convictions for Counts I and II—Class D felony resisting law enforcement and Class A misdemeanor resisting law enforcement.

## Discussion and Decision

On appeal, Bulliner argues that his two convictions for resisting law enforcement violate the Double Jeopardy Clause of the Indiana Constitution.[1] Specifically, he argues that the convictions violate the actual-evidence test and the continuing-crime doctrine. Whether convictions violate double jeopardy is a question of law which we review de novo. *Vermillion v. State*, 978 N.E.2d 459, 464 (Ind. Ct. App. 2012) (citing *Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002)).

Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense in violation of Article 1, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another

---

[1] Bulliner does not argue that his convictions violate federal double-jeopardy principles.

4

challenged offense. Under the actual-evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

To prove Bulliner guilty as charged on Counts I and II, the State had to show that he "knowingly or intentionally . . . fle[d] from a law enforcement officer after the officer ha[d], by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35-44.1-3-1(a)(3). The felony count, Count I, required an additional showing that Bulliner had used a vehicle to flee law enforcement. I.C. § 35-44.1-3-1(b)(1)(A).

The record shows that separate and distinct evidence supported each conviction. Count I, the Class D felony charge, was based on Bulliner's first flight—by car—from Sergeant Clement after the sergeant activated his police car's lights and siren. Appellant's App. p. 14; Tr. p. 95-96. Count II, the Class A misdemeanor charge, was based on Bulliner's later flight by foot, which occurred after Bulliner had gotten out of his car, charged at Sergeant Clement, and ignored the sergeant's orders to get on the ground. *Id.* at 15, 102-03. From this, we conclude that the State established that Bulliner committed two separate offenses based on distinct facts. Because there is no reasonable possibility that the same evidentiary facts were used to establish the essential elements of Counts I and II, there is no double-jeopardy violation.

Bulliner also argues that his convictions violate the continuing-crime doctrine, which is "a category of Indiana's prohibition against double jeopardy." *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010) (citing *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002), *reh'g denied*). "The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker*, 932 N.E.2d at 735 (citing *Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), *trans. denied*). We have explained, however, that the doctrine

> [d]oes not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. In doing so, the continuous-crime doctrine prevents the State from charging a defendant twice for the same continuous offense.

*Id.* at 736.

Bulliner argues that this case is factually indistinguishable from *Arthur v. State*, 824 N.E.2d 383 (Ind. Ct. App. 2005), *trans. denied*, where this Court found that a defendant's flight from police by car and foot was one continuous act.[2] In *Arthur*, the defendant was pulled over for failing to use his turn signal. As the officer approached Arthur's car, Arthur sped away. Police pursued Arthur, who crashed his car into a fence and then got out of his car and fled on foot. *Id.* at 384. Critically, Arthur's flight from police, though initially by car and later on foot, was uninterrupted, and for this reason, we

---

[2] In *Brock v. State*, 955 N.E.2d 195, 204 (Ind. 2011), our Supreme Court disagreed with this Court's treatment of another issue in *Arthur*. That issue—what evidence is necessary to sustain a conviction for operating a vehicle after a defendant's driving privileges have been suspended for life—is not at issue here.

concluded that Arthur "committed one continuous act of fleeing, albeit by two different means," and vacated one of his convictions for resisting law enforcement. *Id.* at 387.

Contrary to Bulliner's assertion, *Arthur* is distinguishable. Here, Bulliner fled from police twice in separate episodes. He first fled by car, until he crashed the car and was intercepted by Sergeant Clement, ending his first flight. Bulliner then removed his jacket and shirt and threw them on the ground, shouted at Sergeant Clement, and charged at him, stopping to pace in circles. Throughout this, Bulliner ignored the sergeant's orders to get on the ground. Bulliner then fled a second time into a nearby field. Bulliner's actions do not constitute one continuous flight from law enforcement, as was the case in *Arthur*, but rather two episodes punctuated by a standoff with Sergeant Clement. And this Court has upheld multiple convictions for resisting law enforcement where a defendant has committed two distinct acts of resisting law enforcement separated by time or nature. *Sanders v. State*, 914 N.E.2d 792, 794-95 (Ind. Ct. App. 2009), *trans. denied*; *Johnson v. State*, 774 N.E.2d 1012, 1014-15 (Ind. Ct. App. 2002). Here, Bulliner committed two distinct acts of resisting law enforcement separated by the nature of his interactions with Sergeant Clement. His convictions do not violate the continuing-crime doctrine.

Affirmed.

KIRSCH, J., and PYLE, J., concur.

7