Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED
Nov 07 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEFFREY V. MCCLOUD, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  49A02-1304-CR-322 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1211-FB-77231

**November 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Jeffrey McCloud ("McCloud") was convicted of two counts of Burglary, as Class B felonies;[1] two counts of Theft, as Class D felonies;[2] Auto Theft, as a Class C felony;[3] Possession of Methamphetamine, as a Class D felony;[4] Resisting Law Enforcement, as a Class D felony;[5] Resisting Law Enforcement, as a Class A misdemeanor; and Possession of Paraphernalia, as a Class A misdemeanor.[6] The trial court also found McCloud to be a Habitual Offender.[7] McCloud was sentenced to an aggregate term of imprisonment of forty-seven years. He now appeals his convictions for Resisting Law Enforcement, and challenges the sentence imposed.

We affirm in part, reverse in part, and remand with instructions.

## Issues

McCloud raises three issues for our review, which we restate as:

I. Whether, on double jeopardy principles, the trial court erred when it entered judgment against McCloud for two counts of Resisting Law Enforcement;

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-43-4-2.

[3] I.C. § 35-43-4-2.5.

[4] I.C. § 35-48-4-6.1.

[5] I.C. § 35-44.1-3-1.

[6] I.C. § 35-48-4-8.3.

[7] I.C. § 35-50-2-8.

II.   Whether the trial court erred when it sentenced McCloud to two years imprisonment for Resisting Law Enforcement and Possession of Paraphernalia, each as Class A misdemeanors; and

III.   Whether McCloud's sentence is appropriate under Appellate Rule 7(B).

**Facts and Procedural History**

On September 22, 2012, McCloud stole a silver Toyota Corolla ("the stolen Toyota") owned by Enterprise Rent-A-Car and rented by the company to a customer. Using the stolen Toyota for transportation, McCloud and his girlfriend, Brittany Lane ("Lane"), subsequently broke into two homes on the southwest side of Indianapolis during the course of the afternoon of September 27, 2012. During the burglaries, McCloud and Lane stole television sets, laptop computers, jewelry, and other personal effects. Before engaging in the second burglary, McCloud and Lane returned to a house on West Caven Street in Indianapolis owned by Lane's father, in which the couple was living, to drop off items obtained during the first burglary. Witnesses to both burglaries observed the stolen Toyota at the scenes, and provided descriptions of suspects that corresponded to the physical characteristics of McCloud and Lane.

At approximately 2:30 a.m. on October 4, 2012, Indianapolis police executed a traffic stop of a vehicle driven by Christopher Whitis ("Whitis"), an acquaintance of Lane and McCloud whom Lane's father had hired to perform repairs on the West Caven Street residence. The vehicle Whitis was driving had been reported as stolen, and Whitis told police that he had purchased the vehicle from McCloud for $400. Whitis then directed police to the West Caven Street residence.

3

Upon arriving at the West Caven Street residence, police were unable to make contact with McCloud or Lane. Police recovered a stolen Chevrolet Suburban from the residence. Police also observed the stolen Toyota at the residence. But because McCloud had switched the license plate from the vehicle with a plate stolen from another individual's Toyota Corolla, police were initially unable to determine whether the vehicle had been stolen.

On October 5, 2013, police obtained a search warrant for the West Caven Street residence, and served the warrant. McCloud and Lane were not present at the residence. During execution of the warrant, police were able to connect the stolen Toyota to the reported theft of the vehicle on September 22, 2012, and recovered the vehicle. Police also recovered a trailer that had been attached to the Chevrolet Suburban recovered the prior day. A search of the residence led to the recovery of various items of personal property belonging to the families of the two burglarized homes, as well as to the recovery of property (including a firearm and ammunition) stolen from the residence of a third family.[8]

Subsequent to this, a warrant was issued for McCloud's arrest.

On November 9, 2012, based upon information obtained during investigative work, Indianapolis police identified McCloud and Lane leaving the residence of a third party. Police followed the vehicle and initiated a traffic stop but, when the vehicle came to a stop, only Lane remained in the car.

Two days later, on November 12, 2012, police again executed a traffic stop of a stolen vehicle Whitis was driving. Whitis indicated that McCloud was in the area on a motorcycle.

---

[8] McCloud was not charged with burglary of the third residence.

4

While talking to Whitis, Indianapolis Metropolitan Police Department ("IMPD") Officer Michael O'Day, who had executed the traffic stop of Lane on November 9, heard the exhaust system of a motorcycle travelling at a high rate of speed.

At the same time, IMPD Officer Roger Taylor ("Officer Taylor") saw a motorcycle turn onto the street where Whitis had been stopped. Upon seeing police presence, McCloud, who was determined to be the driver of the motorcycle, slowly turned the motorcycle around and attempted to leave the scene. After hearing on the police radio that McCloud was driving a motorcycle in the area, Officer Taylor turned his marked police vehicle around, turned on his emergency lights, and attempted to catch up with and stop McCloud.

After a brief vehicular chase, McCloud drove the motorcycle onto a residential yard and between a recreational vehicle ("RV") and a tree; McCloud then abandoned the motorcycle and began to flee on foot. Unable to drive his vehicle in pursuit, Officer Taylor exited his police car and began to pursue McCloud on foot through an alley behind a series of residences. McCloud was able to clamber over several fences, and eventually crossed into the yard of another residence.

While Officer Taylor pursued McCloud on foot, IMPD Officer Douglas Himmel ("Officer Himmel") drove his police vehicle along the same street where Whitis's house was located, and used his vehicle's spotlight to illuminate yards and alleys as he passed. As he lit the front porch of a house, Officer Himmel observed McCloud walking along the porch.

When the spotlight's beam struck him, McCloud jumped off the porch and appeared prepared to run. Officer Himmel ordered McCloud to the ground, but McCloud instead

5

assumed a crouching position, preparing to run again. Officer Himmel again ordered McCloud to the ground, this time threatening to release a K9 unit if McCloud did not comply.[9] McCloud began to go to the ground, but put only his left hand into the air; Officer Himmel observed McCloud's right hand "digging" in his waistband.

McCloud eventually realized Officer Himmel did not have a K9 partner with him and again prepared to flee. But by this time, Officer Taylor, still on foot, had caught up with McCloud and tackled him to the ground. After a struggle, Officers Taylor and Himmel handcuffed McCloud and placed him under arrest. Officer Himmel then searched McCloud's person, recovering 0.9006 grams of methamphetamine and an unused hypodermic syringe from McCloud's pants.

On November 14, 2012, McCloud was charged with two counts of Burglary, as Class B felonies; two counts of Auto Theft, as Class D felonies; four counts of Theft, as Class D felonies; Resisting Law Enforcement, as a Class D felony; Possession of Methamphetamine, as a Class D felony; Resisting Law Enforcement, as a Class A misdemeanor; and Possession of Paraphernalia, as a Class A misdemeanor. The State also filed charging informations seeking enhancement of both counts of Auto Theft from a Class D felony to a Class C felony. On January 26, 2013, based upon several prior felony convictions, the State alleged McCloud was a habitual offender.

On February 11, 2013, the State moved to amend the charging information, which motion the trial court granted.

---

[9] Officers Himmel and Taylor both testified that Officer Himmel did not have a K9 partner at the time of the arrest, but explained that Officer Himmel intended the threat as a ruse to persuade McCloud to cease his flight.

A jury trial was conducted from February 11 to February 13, 2013. At the conclusion of the trial, the jury found McCloud guilty of two counts of Burglary, as Class B felonies; two counts of Theft, as Class D felonies; Auto Theft, as a Class C felony (based upon the enhancement); Possession of Methamphetamine, as a Class D felony; Resisting Law Enforcement, as a Class D felony; Resisting Law Enforcement, as a Class A misdemeanor; and Possession of Paraphernalia, as a Class A misdemeanor. The jury found McCloud not guilty of one charge of Auto Theft and one charge of Theft. McCloud subsequently admitted to his status as a Habitual Offender, and the trial court entered a corresponding finding to that effect.

On March 13, 2013, the trial court sentenced McCloud to fifteen years imprisonment for each count of Burglary, as Class B felonies, with the two counts of Burglary run consecutive to one another; two years imprisonment for Auto Theft, as a Class C felony and each of the two counts of Theft, as Class D felonies, all of which were run concurrent with one another and with the second of the two sentences for Burglary; two years imprisonment for Resisting Law Enforcement, as a Class D felony, with the sentence run consecutive to the second of the two sentences for Burglary; two years imprisonment for Possession of Methamphetamine, as a Class D felony, with the sentence run concurrent with the sentence for Resisting Law Enforcement, as a Class D felony; and two years imprisonment each for Resisting Law Enforcement and Possession of Paraphernalia, each as Class A misdemeanors, with each sentence run concurrent with the sentence for Resisting Law Enforcement, as a Class D felony. Based upon the habitual offender finding, the trial court enhanced the

7

sentence for the first of McCloud's convictions for Burglary by fifteen years. Altogether, this yielded an aggregate term of imprisonment of forty-seven years.

This appeal ensued.

**Discussion and Decision**

Double Jeopardy

We turn first to McCloud's contention on appeal that the trial court erred when it entered judgment against him for both counts of Resisting Law Enforcement. Specifically, McCloud contends that entry of convictions for two counts of Resisting Law Enforcement is barred because McCloud's flight from Officers Taylor and Himmel amounted to a single, continuous act.

"The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." Riehle v. State, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), trans. denied. "[T]he continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy." Walker v. State, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). However, the continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes, but rather defines those instances where a defendant's conduct amounts to only a single chargeable crime. Id.

Reviewing numerous appeals from multiple convictions for Resisting Law Enforcement, applying the continuing crime doctrine, this Court has sometimes reversed one

8

or more of the multiple convictions entered by a trial court, and has at other times left those convictions undisturbed. We have affirmed multiple convictions for resisting law enforcement when, for example, the acts the defendant has committed are "different species," Arthur v. State, 824 N.E.2d 383, (Ind. Ct. App. 2005), disapproved on other grounds by Brock v. State, 955 N.E.2d 195 (Ind. 2011), such as simple flight along with resistance that causes injury to a police officer. Williams v. State, 755 N.E.2d 1183, 1185 (Ind. Ct. App. 2001). Flight from police on two different occasions, even separated by a few minutes, has also been held to constitute separate offenses supporting multiple convictions for Resisting Law Enforcement. Sanders v. State, 914 N.E.2d 792, 795 (Ind. Ct. App. 2009), trans. denied.

When a defendant has resisted law enforcement by fleeing in a vehicle and then abandoned the vehicle and fled on foot, or vice versa, we have held that these are not different species of acts and constitute a single, continuous act of resistance that will support only one conviction for Resisting Law Enforcement. Arthur, 824 N.E.2d at 387. And because we have held that Resisting Law Enforcement is not a crime against persons, "where through one continuous act of flight a defendant merely evades several police officers, only a single instance of resisting law enforcement occurs." Vest v. State, 930 N.E.2d 1221, 1227 (Ind. Ct. App. 2010), trans. denied.

Here, McCloud argues that his flight from Officer Taylor, which was ultimately stopped by Officers Taylor and Himmel together, is a single act of Resisting Law Enforcement that involved two means of flight—fleeing by motorcycle and then on foot—in a single continuous act. The State argues that the evidence that favors the judgment properly

supports two convictions: one for McCloud's flight from Officer Taylor both by motorcycle and on foot, the other for fleeing Officers Taylor's and/or Himmel's efforts to apprehend him. That is, the State contends that the evidence supports a conclusion that there were two different incidents of flight, separated by a distinct period of time.

The charging information filed by the State included two counts of Resisting Law Enforcement: one Class D felony alleging that McCloud's flight from Officer Taylor, while on a motorcycle, amounted to Resisting Law Enforcement; and one Class A misdemeanor charge alleging that McCloud resisted Officer Taylor and/or Officer Himmel by fleeing on foot. Our review of the preliminary instructions submitted to the jury, however, show that while the jury was informed of the totality of the charging information, it was instructed regarding Resisting Law Enforcement—once as a Class D felony, once as a Class A misdemeanor—only as to Officer Taylor. That is, aside from a recitation of the contents of the charging information, the specific preliminary instructions given to the jury related *only* to McCloud's alleged flight, and *only* as to Officer Taylor; no final instructions were given that modified or supplanted the preliminary instructions on these charges.

At trial, Officer Taylor testified that McCloud fled on a motorcycle, then abandoned the motorcycle and started a foot chase through yards and an alley. During this, Officer Taylor indicated over police radio that he was pursuing McCloud on foot and the general direction in which McCloud was headed. Officer Himmel testified that he drove his police cruiser along one of the streets, houses of which lined one side of the alley, and saw McCloud walking on the porch of one of the houses. Officer Himmel further testified that

10

once he illuminated McCloud with his spotlight, McCloud jumped off the porch, appeared to assume a runner's crouch, and moved several times in a manner indicating that he was ready to once again flee on foot. It was only after Officer Taylor arrived that the two officers were able to dislodge McCloud's right hand from underneath his body and complete an arrest.

Thus, looking to the jury instructions, aside from the charging information's allegations, the jury was instructed only as to McCloud's flight from Officer Taylor. Whether McCloud's flight from Officer Taylor had ceased by the time Officer Himmel saw him on the porch of a house, or whether that flight was ongoing, there is no evidence that McCloud attempted to flee from Officer Taylor a second time.

Further, the evidence does not establish that there was a break in time such that McCloud engaged in two separate acts of flight, as opposed to a single, continuous act. The evidence submitted at trial—that is, the testimony of Officers Taylor and Himmel—indicates that both officers were in a coordinated pursuit of McCloud, whose flight began and ended with Officer Taylor. Though McCloud was spotted by Officer Himmel and appeared as though he was prepared to flee, Officer Himmel's testimony indicates that McCloud never actually did so. Officer Taylor's testimony indicated that he remained in constant pursuit of McCloud until he apprehended him, and Officer Himmel's testimony indicated that it was only when Officer Taylor arrived and tackled McCloud that an arrest was effected.

We therefore conclude that McCloud's two convictions for Resisting Law Enforcement were based upon a single episode of flight. Thus, entry of judgment against McCloud on both counts of Resisting Law Enforcement was in error. Because the evidence

11

introduced at trial supports McCloud's conviction for Resisting Law Enforcement, as a Class D felony, on remand we order the trial court to vacate McCloud's conviction for the Class A misdemeanor charge of Resisting Law Enforcement.

## Misdemeanor Sentencing

We turn next to McCloud's argument that the trial court erred when it sentenced him to two years imprisonment each for Resisting Law Enforcement and Possession of Paraphernalia, as Class A misdemeanors. The State agrees in its brief that these sentences exceed the statutory range.

So long as a sentence is within the statutory range, we will reverse a sentence only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. Upon conviction of a Class A misdemeanor, a defendant may be sentenced to a maximum of 365 days imprisonment for each offense. I.C. § 35-50-3-2. Here, the trial court sentenced McCloud to two years imprisonment for each of the two Class A misdemeanor convictions, that is, for terms of imprisonment clearly beyond that authorized by statute.

Because we have already held that the trial court must vacate McCloud's conviction for Resisting Law Enforcement, as a Class A misdemeanor, his appeal as to the propriety of the sentence on that offense is moot. As to the Class A misdemeanor conviction for Possession of Paraphernalia, we remand with instructions to the trial court to revise the sentence on that offense downward to a term of imprisonment within the range authorized by the Class A misdemeanor sentencing statute.

12

<u>Inappropriateness</u>

We turn now to McCloud's last issue on appeal, whether the trial court's forty-seven year aggregate sentence was inappropriate under Appellate Rule 7(B) and the Indiana Constitution. McCloud was convicted of two counts of Burglary, as Class B felonies, each carrying a sentencing range of six to twenty years imprisonment, I.C. § 35-50-2-5; one count of Auto Theft, as a Class C felony, carrying a sentencing range of two to eight years imprisonment, I.C. § 35-50-2-6(a); four Class D felonies in the form of two counts of Theft, one count of Resisting Law Enforcement, and one count of Possession of Methamphetamine, each carrying a sentencing range of six months to three years imprisonment, I.C. § 35-50-2-7(a); and one count of Possession of Paraphernalia, as a Class D misdemeanor, which carries a sentencing range of up to 365 days imprisonment.[10] I.C. 35-50-3-2.

McCloud was also adjudicated as a habitual offender, which subjected him to enhancement of one of his sentences by at least the advisory term of that underlying offense, with a possible maximum of the lesser of either three times the advisory term or thirty years. I.C. § 35-50-2-8(h). Here, the trial court enhanced one of the Class B felony convictions for Burglary, which carries an advisory term of ten years, I.C. § 35-50-2-5; thus McCloud faced an enhancement of ten to thirty years.

Here, McCloud burglarized two residences on the same day, in broad daylight and observed by numerous other individuals. At the time of one these offenses, a juvenile was at

---

[10] Because we have ordered vacated McCloud's conviction for Resisting Law Enforcement, as a Class A misdemeanor, we do not take that conviction and its potential penalties into account in our review of the inappropriateness *vel non* of his aggregate sentence under Appellate Rule 7(B).

home alone and placed in fear of his safety by McCloud's actions. Victim impact statements introduced at sentencing also revealed that McCloud's offenses caused other victims to feel insecure in their own homes.

Prior to the burglaries, McCloud had stolen a vehicle, which he then used to transport himself, Lane, and stolen property to and from the sites of the burglaries. During the burglaries, McCloud stole significant amounts of property—some of monetary value like televisions and computers, some of sentimental value like a family Bible. At some point, McCloud also stole at least one firearm and accompanying ammunition. McCloud appears to have evaded police capture on at least one occasion several days prior to his arrest and, on the date of his arrest, fled police by vehicle and on foot. His conduct at the time of his arrest placed at least one officer in significant fear of injury.

Prior to all this, McCloud acquired a significant number of prior criminal convictions and juvenile delinquency adjudications, including convictions for other property crimes and operating a motor vehicle without ever having been issued a driver's license. He has violated probation on several occasions, and has demonstrated continuing drug use problems.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due

14

consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-25 (Ind. 2008); Serino v. State, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.

Having reviewed the matter, our collective judgment is that the sentence the trial court imposed was not inappropriate under Appellate Rule 7(B) and does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

**Conclusion**

Double jeopardy principles embodied in the continuing crime doctrine bar entry of two judgments of conviction against McCloud for Resisting Law Enforcement. The trial court erred when it imposed a sentence in excess of statutory authority against McCloud for Possession of Paraphernalia, as a Class A misdemeanor. McCloud's forty seven-year sentence was not inappropriate under Appellate Rule 7(B). We therefore affirm in part, reverse in part, and remand with instructions to vacate McCloud's conviction for Resisting Law Enforcement, as a Class A Misdemeanor, and to enter a sentence within the authorized statutory range on McCloud's conviction for Possession of Paraphernalia, as a Class A misdemeanor.

Affirmed in part, reversed in part, and remanded.

MAY, J., and BRADFORD, J., concur.

15