## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 08 2016, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Thompson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 8, 2016

Court of Appeals Case No.
49A05-1605-CR-1082

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Trial Court Cause No.
49G06-1510-F3-36806

**Bailey, Judge.**

# Case Summary

Joshua Thompson ("Thompson") was convicted after a jury trial of Armed Robbery, as a Level 3 felony,[1] and two counts of Resisting Law Enforcement, one as a Level 6 felony and one as a Class A misdemeanor.[2]  He now appeals.

We affirm in part, reverse in part, and remand.

# Issues

Thompson raises two issues for our review, which we restate as

    I.    Whether the trial court erred when it permitted the State to amend the charging information after the first day of trial, after evidence had been heard by the jury; and

    II.    Whether one of Thompson's convictions for Resisting Law Enforcement is barred under double jeopardy principles.

# Facts and Procedural History

On July 10, 2015, Nemecio Hernandez-Acevedo ("Hernandez-Acevedo") had borrowed a Chrysler 200, a car belonging to his cousin, Juan Noyoal-Rodriguez ("Noyoal-Rodriguez"), to drive to work.  After work, Hernandez-Acevedo drove to a liquor store in Indianapolis.  While in the parking lot of the store,

---

[1] Ind. Code § 35-42-5-1(1).

[2] I.C. § 35-44.1-3-1(a)(3).

Thompson and a companion approached the car. Thompson and his companion, using an airsoft pellet gun[3] that was cosmetically identical to a standard firearm, held Hernandez-Acevedo at gunpoint and forced him to drive them to a number of locations on Indianapolis's east side. The pair eventually left Hernandez-Acevedo at the side of a road and drove away in Noyoal-Rodriguez's car.

[5]     Hernandez-Acevedo, with help from people at a nearby gas station, called police, who responded and took a report. He then took a taxi cab home. When he arrived at home, Hernandez-Acevedo told Noyoal-Rodriguez what had happened. They called police and reported the car stolen. As a result of the theft, a GPS device was activated on the car that allowed police to track it.

[6]     A few days later, on July 13, 2015, Officer Charles King ("Officer King") of the Indianapolis Metropolitan Police Department was dispatched to investigate a location where GPS systems indicated Noyoal-Rodriguez's Chrysler might be. Officer King saw the vehicle at the intersection of Falls Church Drive and Peter Court in Indianapolis. Officer King saw Thompson driving the car and made eye contact with Thompson; Officer King then activated the patrol car's lights to conduct a traffic stop, but Thompson drove away. Officer King pursued Thompson a short distance down Peter Court, which ended in a cul-de-sac.

---

[3] An airsoft gun uses compressed air to propel round plastic pellets, rather than metal pellets or BBs.

Thompson drove the car into the yard of one of the houses on the cul-de-sac, and then fled on foot.

[7] The Peter Court area backed up against Interstate 70. Thompson fled, climbed over a fence separating the neighborhood from the highway, and ran across the interstate highway. Officer King notified other officers of Thompson's route, and Thompson was eventually apprehended.

[8] After Thompson abandoned the car, Officer King began to search the vehicle and saw the grip of a pistol jutting out from a map pocket on the driver's door. Officer King called for an evidence technician to photograph the scene and for a gun liaison to retrieve the weapon. The gun liaison determined that the pistol was an airsoft gun that was visually identical to a standard firearm, but that was much lighter in weight and was capable of firing pellets or BBs.

[9] On October 16, 2015, Thompson was charged with four counts of Kidnapping, as Level 3 felonies;[4] two counts of Armed Robbery, as Level 3 felonies; one count of Criminal Confinement, as a Level 3 felony;[5] and two counts of Resisting Law Enforcement, one as a Level 6 felony, and one as a Class A misdemeanor. The charges for Armed Robbery differed as to the property identified as having been taken by force from Hernandez-Acevedo. Both charges shared language alleging that the charged offenses were committed "by

---

[4] I.C. § 35-42-3-2(a).

[5] I.C. § 35-42-3-3(a).

use of force or by threatening the use of force, to-wit: by demanding said items while having brandished a handgun; said act being committed while the defendant was armed with a deadly weapon, to-wit: said handgun." (App'x at 40.)

[10] A jury trial was conducted on April 11 and 12, 2016. At the beginning of the trial, the jury was instructed on Armed Robbery and all the other charges as per the charging information. After the first day of the trial, the State moved to amend the charging information so that it would allege that Thompson had committed Armed Robbery using a deadly weapon, but would omit language related to the use of a handgun. Thompson objected to the amendment as untimely and as prejudicial to his defense. The trial court granted the State's motion to amend the charging information. When final instructions were issued to the jury, they reflected the charges as amended and omitted any mention of a handgun.

[11] At the close of the trial, the jury found Thompson guilty of one count of Armed Robbery and both counts of Resisting Law Enforcement. The jury returned not guilty verdicts on all other offenses except for Criminal Confinement, on which the jury was hung. On April 29, a sentencing hearing was conducted, during which the trial court entered judgment on the Armed Robbery and Resisting Law Enforcement guilty verdicts, and the State moved to dismiss the Criminal Confinement charge. At the conclusion of the hearing, the court sentenced Thompson to nine years imprisonment for Armed Robbery, with one year to be served in community corrections; two years imprisonment for Resisting Law

Enforcement, as a Level 6 felony, to be served in community corrections consecutive to the sentence for Armed Robbery; and one year imprisonment for Resisting Law Enforcement, as a Class A misdemeanor, with the sentence running concurrent with the sentence for the felony-level charge of Resisting Law Enforcement.

This appeal ensued.

# Discussion and Decision

## Amendment of the Charging Information

Thompson's appeal first challenges the trial court's decision granting the State's motion to amend the charging information after the first day of trial, because the amendment was one of substance that impaired Thompson's defense and thus prejudiced his rights. The Indiana Code provides, "Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." I.C. § 35-34-1-5(c). The Indiana Supreme Court has set forth the test for determining whether an amendment to the charging information was one of form or of substance:

> …an amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an

> amendment is one of substance only if it is essential to making a valid charge of the crime.

*Fajardo v. State*, 859 N.E.2d 1201, 1207 (Ind. 2007).

[14] Even if an amendment is one of form, it must not prejudice a defendant's substantial rights. I.C. § 35-34-1-5(c) ("permit[ting] an amendment … in form which does not prejudice the substantial rights of the defendant."). Among a defendant's substantial rights are notice and an opportunity to be heard regarding the charge. *Nunley v. State*, 995 N.E.2d 718, 723 (Ind. Ct. App. 2013) (citing *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), *trans. denied*), *clarified on reh'g*, 4 N.E.2d 669, *trans. denied*. If an amendment does not affect any particular defense or change the positions of either of the parties, it does not violate the defendant's substantial rights. *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014). "'An amendment is of substance only if it is essential to making a valid charge of the crime.'" *Id.* at 406 (quoting *Fajardo*, 859 N.E.2d at 1205). "'Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.'" *Id.* at 406 (quoting *Sides v. State*, 693 N.E.2d 1310, 1313 (Ind. 1998), *abrogated on other grounds by Fajardo*, 859 N.E.2d at 1206-07).

[15] As the case proceeded through the first day of trial, Officer King testified that the weapon found in the car Thompson had been driving on the day of his arrest was an airsoft gun that fired "steel" or "plastic bb's." (Tr. at 97.) Officer King further testified that the airsoft gun used compressed air to fire the projectiles and that those projectiles could seriously injure an individual's eye.

Hernandez-Acevedo, upon being shown the airsoft gun, testified that Thompson and his accomplice had used the gun to commit the robbery.

[16] After the jury had been dismissed for the day, the State moved to amend the charging information, seeking to remove the language related to the use of a handgun. Thompson opposed this, arguing that the defense he had prepared for trial was premised on the distinction between a handgun and an airsoft gun. Thompson argued that the use of the handgun language, incorporated into the charging information as part of the deadly weapon element to be proved by the State, meant the difference between a Level 3 felony and a Level 5 felony for committing robbery while not armed with a deadly weapon. The State conceded that Thompson's position that the airsoft gun was not a handgun was correct, but that the amendments posed no prejudice to Thompson's defense. The trial court agreed with the State and granted the motion to amend the charges.

[17] Turning to the nature of the charges and Thompson's defense, the charging statute that defines the offense of Armed Robbery provides:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on any person; or
>
> (2) by putting any person in fear;

commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in seriously bodily injury to any person other than a defendant.

I.C. § 35-42-5-1.

Prior to trial, the State had charged Thompson with two counts of Armed Robbery. Each included allegations that Thompson had committed the offenses "by use of force or by threatening the use of force, to-wit: by demanding said items while having brandished a handgun; said act being committed while the defendant was armed with a deadly weapon, to-wit: said handgun." (App'x at 40.) The court issued preliminary jury instructions based upon this charge:

> To convict the defendant, the State must prove each of the following elements:
>
> ***
>
> 4. by using force or by threatening the use of force, to-wit: by ordering [Hernandez-Acevedo] to exit said vehicle, leaving the keys in said vehicle,
>
> 5. while armed with a deadly weapon, to-wit, a handgun.

(App'x at 53.)[6]  The preliminary instructions also defined the term "deadly weapon":

> The term "deadly weapon" is defined by law as meaning:
>
> 1. a loaded or unloaded firearm;
>
> 2. or a weapon, device, taser or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, is readily capable of causing serious bodily injury.

(App'x at 46.)

[19]  As amended, the portions of the charges related to use of a deadly weapon for Armed Robbery alleged that Thompson took property from Hernandez-Acevedo, "by using force or by threatening the use of force, to-wit:  by demanding said items while having brandished a deadly weapon; said act being committed while the defendant was armed with a deadly weapon."  (App'x at 69.)  The trial court's final instructions to the jury informed the jury of the nature of the changes to the charging information, and for each count of Armed Robbery stated that the State was required to prove each of the elements of the charged offenses, including that Thompson "took property … from another person … by using force or by threatening the use of force, to-wit:  by

---

[6] Both Armed Robbery charges were presented in the preliminary instructions; they differ only in the property specified as having been taken by force.

demanding said items while having brandished a deadly weapon." (App'x at 84.)[7] With respect to all the charged offenses involving use of a deadly weapon, the jury ultimately found Thompson not guilty of all the Kidnapping and Armed Robbery charges but one—that involving theft of the car Hernandez-Acevedo had been driving.[8]

[20] Here, Thompson argues that the late-amended charging information impaired his defense. Specifically, Thompson argues that the trial court's decision granting the State's motion to amend the charging information was prejudicial to his defense because Thompson's theory of defense was that the airsoft gun was not a firearm under Indiana law, and therefore did not constitute a handgun as alleged in the charging information. Thompson relied on several Indiana cases for this proposition, notably *Miller v. State*, in which this Court held that a "$CO_2$ gas powered .177 caliber pellet gun which looks exactly like a Model 92 Beretta 9mm semiautomatic pistol" was not a handgun as that term was defined in the Indiana Code, because such a weapon was not a firearm. 616 N.E.2d 750, 751 (Ind. Ct. App. 1990). The *Miller* Court reviewed this issue *sua sponte* as a sufficiency-of-the-evidence issue, and vacated Miller's conviction because Miller's pellet gun did not fit the definition of a handgun. *Id.* Citing the *Miller* Court as authority, Thompson contends that the handgun terms of

---

[7] The final instructions also set forth the lesser-included offense of Robbery as a Level 5 felony, to be considered if the State failed to prove the deadly weapon element of Armed Robbery, as charged.

[8] The jury was hung on the allegation of Criminal Confinement, and the State ultimately moved to dismiss that charge.

the charges against him were essential elements of the charged offenses and that his defense was impaired as a result of the amendment to the charging information.

[21] We disagree. Use in the original charging information and the preliminary jury instructions of the term "handgun" was not necessary under the charging statute to establish a violation of Indiana Code section 35-42-5-1, which provides that a Level 3 felony conviction for Robbery may be proved when the defendant is "armed with a deadly weapon," but does not by its terms require proof of the use of a handgun. Revision of the charging information here to delete the use of "handgun" does not change the fundamental charge or statutory elements needed to prove the charged offense of Armed Robbery. *See* Erkins, 13 N.E.3d at 406 (quoting *Fajardo* for the proposition that "'[a]n amendment is of substance only if it is essential to making a valid charge of the crime'"). And while Thompson went into trial expecting to defend against a handgun-related charge, he was aware before trial of the nature of the weapon he was accused of having used in the charged offenses. He thus cannot claim to have been deprived of notice of the evidence against him or of the charges. *See id.* (reiterating *Fajardo*, "'[u]ltimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges'").

[22] We accordingly find no error on the part of the trial court in granting the State's motion to amend the charging information, and we affirm Thompson's conviction for Armed Robbery, as a Level 3 felony.

# Double Jeopardy

[23] Thompson's other contention on appeal is that the trial court's entry of judgment on both felony- and misdemeanor-level charges of Resisting Law Enforcement violates double jeopardy principles—specifically, Indiana's continuing crime doctrine—and that the misdemeanor conviction should be vacated. The State, while not conceding the point, seems implicitly to agree.

[24] The continuing crime doctrine "'reflects a category of Indiana's prohibition against double jeopardy.'" *Chavez v. State*, 988 N.E.2d 1226, 1228 (Ind. Ct. App. 2013) (quoting *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010)), *trans. denied*. The double jeopardy clause of the Indiana Constitution has been interpreted to prohibit a defendant from being convicted multiple times for a single continuous offense, rather than to reconcile the implications of two separately chargeable offenses. *Id.* (citing *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2000)).

[25] This Court has on several occasions expressly held that where a single episode of flight from police involves a defendant's use of a vehicle, abandonment of the vehicle, and immediate and continued flight from police on foot, the continuous crime doctrine operates to vitiate the lesser misdemeanor charge. *Lewis v. State*, 43 N.E.2d 689, 691 (Ind. Ct. App. 2015) (citing *Arthur v. State*, 824 N.E.2d 383, 385 (Ind. Ct. App. 2005), *disagreed with on other grounds*, *Brock v. State*, 955 N.E.2d 195 (Ind. 2011)). The facts here are on all-fours with those cases: Thompson was pursued by police while driving the stolen Chrysler,

abandoned the vehicle, continued his flight on foot, and was soon thereafter apprehended by other officers during the same pursuit. We accordingly agree with Thompson that his Class A misdemeanor conviction for Resisting Law Enforcement must be vacated. We leave undisturbed his conviction for Resisting Law Enforcement, as a Level 6 felony, and remand this case to the trial court to correct its records.

# Conclusion

The trial court did not err when it granted the State's motion to amend the charging information after the first day of the trial. Thompson's conviction for two counts of Resisting Law Enforcement is contrary to double jeopardy principles, and we vacate his conviction for Resisting Law Enforcement, as a Class A Misdemeanor, leaving his Level 6 felony conviction undisturbed. We remand to the trial court for purposes of correcting its record.

Affirmed in part, reversed in part, and remanded.

Najam, J., and May, J., concur.